**Taajwar K. RASHEED–BEY, formerly known as Lorenzo Stone, Plaintiff–Appellant,**

v.

**Jack R. DUCKWORTH, Warden, Henry Abbott, Jr., Ron Maddox, et al., Defendants–Appellees.**

No. 91–2997.

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1992.

Decided July 22, 1992.

---

William E. Marsh (argued), Indianapolis, Ind., for plaintiff-appellant.

David L. Steiner, (argued), Robert B. Wente, Deputy Attys. Gen., Office of the Atty. Gen., Federal Litigation, Indianapolis, Ind., for defendants-appellees.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Taajwar K. Rasheed–Bey, formerly known as Lorenzo Stone, is an inmate serving a life sentence for murder in the Indiana State Prison (ISP). Rasheed–Bey sued several ISP officials and employees under 42 U.S.C. § 1983, alleging that he was deprived of a liberty interest without due process of law in violation of the Fourteenth Amendment to the United States Constitution when the defendants sentenced him to disciplinary segregation following an inadequate hearing. After a bench trial, the district court concluded that Rasheed–Bey's hearing was constitutionally sound, but then granted the defendants qualified immunity. Because we agree with the district court that the defendants did not violate Rasheed–Bey's constitutional rights, we affirm its judgment on that basis; the district court need not have relied upon the affirmative defense of qualified immunity.

I.

On August 29, 1985, ISP investigator Henry Abbott, Jr. opened a letter addressed to Rasheed–Bey as part of a routine screening for contraband.[1] The envelope's exterior indicated that the letter was from Dorothy Halley of West Palm Beach, Florida. The envelope contained a $500.00 money order and a handwritten letter that read:

> Hi. Got your letter also the money order. I don't want to get mixed up in something that I don't know about. You could have sent the money order to Mr. Brown yourself. I appreciate your thoughtfulness, but if you wanted to

---

[1] Our statement of the facts is liberally borrowed from the district court's memorandum and order following trial. *R.* 106. Rasheed–Bey does not challenge any of the district court's factual findings.

send me a personal gift, that's fine, but that just looked funny to me....

It looked funny to Mr. Abbott, too; he immediately notified postal inspectors with whom he was working that he had discovered the money order.[2] Postal inspectors later confirmed that the money order in the Halley letter originally had been issued for $1.00 and then had been altered to show a $500.00 value. Consequently, Mr. Abbott directed that Rasheed–Bey be transferred to a segregation unit pending an investigation, and provided Rasheed–Bey with a "Report of Investigation of Incident" and a "Conduct Report," which are the formal documents ISP uses to initiate a disciplinary proceeding. The investigative report stated:

> It has been determined that inmate Rasheed (Stone) # 10006 on or about Aug[ust] 1985 did thr[ough] a David Vokavich send an altered money order # 33110968476 850202 480770 500.00 (raised from a one dollar money order) thr[ough] the U.S. Mail to a Dorothy B. Halley. Mr. Rasheed (Stone) violated title 18 USC [sic] and title 18 USC 1341. See File # 85–050.

The conduct report stated:

> It has been determined that on or about the above date [August 1985] inmate Rasheed (Stone) # 10006 did send thr[ough] a David Vokavich a 500.00 dollar U.S. Postal money order which had been altered/raised from a one dollar money order. Mr. Rasheed (Stone) vio-

lated title 18 USC 500 and title 18 USC 1341. See File # 85–050.

Rasheed–Bey pleaded not guilty to the charge, requested a lay advocate, and indicated that there were no witnesses whom he wished to call at his hearing. A hearing before the Conduct Adjustment Board (CAB) was held on October 1, but the record does not disclose the nature and purpose of that hearing. On October 29, however, Mr. Abbott provided Rasheed–Bey notice of a second disciplinary charge, this one stemming from the October 1 hearing:

> While appearing at a CAB hearing on Oct. 1, 1985 it has been determined that inmate Rasheed (Stone) did perjure his self [sic] by making the statement that he had no prior money order involvement—information received from federal postal inspectors clearly revealed that inmate Rasheed is also involved in a money order scheme in Harriman, Tenn. that began prior to inmate Rasheed's CAB hearing. See case # 85050.

The CAB held a second hearing for Rasheed–Bey on November 1, 1985. Mr. Abbott met with the CAB before the hearing, reviewing his file with them and providing them an unsworn briefing regarding his investigation.[3] Mr. Abbott was not present when Rasheed–Bey and his lay advocate appeared for the CAB hearing. During the hearing, Rasheed–Bey sought disclosure of file number 85–050, which was considered confidential.[4] The CAB denied that re-

---

**2.** Mr. Abbott had been working with federal postal authorities on nearly a daily basis with respect to a money order-mail fraud scheme operated by several ISP inmates. In the scheme, which ultimately defrauded the public out of $1.4 million, inmates smuggled money orders into, and altered money orders out of, the prison. The investigation had gone on for at least three years before Mr. Abbott opened this letter; Rasheed–Bey's name had come up in earlier conversations between Mr. Abbott and postal inspectors. Between 1984 and 1989, about sixty-three inmates were prosecuted as a result of the money order investigation. When federal prosecutions ceased in 1989, 277 additional inmates (including Rasheed–Bey) were on a list for prosecution. *Tr.* 29–31.

**3.** The CAB chairman testified that it was customary for him to meet with the investigator before any CAB hearing.

**4.** Documents and information relating to the prison money order scam were treated as confidential by the various entities involved in the investigation and prosecution of the case. The U.S. Attorney's Office, the U.S. Postal Inspector's Office and officials at ISP agreed that these confidential files would not be given to inmates during prison conduct proceedings, at least until the conclusion of a prosecution. Mr. Abbott and ISP Superintendent Jack Duckworth testified that the release of such information would have jeopardized the safety of non-inmates who were involved and inmates who were providing information; they also believed that confidentiality was necessary to stay one step ahead of the inmates because the inmates would use the investigative information to devise ways to avoid getting caught.

quest as well as Rasheed–Bey's request to cross-examine Mr. Abbott. Rasheed–Bey and his advocate sought to get the charges against Rasheed–Bey dismissed on procedural grounds. The CAB declined to do so, however, and found Rasheed–Bey guilty:

> The CAB did hear this report and statements from accused and Lay Adv. The CAB does find the accused guilty of the charge of Code 100/11. We feel that there is enough evidence in Investigator's Case # 85–050 to find in favor of the report as written. Federal Authorities have substantiated the evidence.

The CAB imposed a three-year term of disciplinary segregation, although Rasheed–Bey ultimately served just under one year in segregation. Compared to the general prison population, segregated prisoners are more closely confined and enjoy fewer privileges.

Rasheed–Bey appealed the CAB's decision to ISP Superintendent Jack Duckworth, arguing that his request to see confidential file number 85–050 should have been honored. Superintendent Duckworth denied the appeal, stating that "[a] copy of the investigative summary would have been available to you per section 14, B, (8)." [5] Rasheed–Bey then sued Duckworth and other ISP officials and employees under section 1983, alleging that he was deprived of a liberty interest without due process of law. Specifically, he alleged that his hearing before the CAB was constitutionally deficient because the contents of file number 85–050 was not disclosed to him. That nondisclosure, argued Rasheed–Bey, prevented him from presenting a meaningful defense at the hearing. The defendants asserted that Rasheed–Bey received all the process he was due at the CAB hearing, and that in the alternative, the doctrine of qualified immunity shielded them from liability if the court should find that disclosure of their confidential file was constitutionally required.

After a bench trial, the district court entered judgment in favor of the defendants, finding that the "defendants' conduct of the CAB hearing was appropriate, even though the defendants' conduct denied the plaintiff access to certain information considered by the hearing board in deciding his case." *R.* 106 at 24. Despite the fact that the district court found that the defendants did not violate Rasheed–Bey's due process rights, the court proceeded to hold that "the doctrine of qualified immunity shields the defendants from any liability in this action for Mr. Rasheed–Bey's alleged violation of his right to due process under law pursuant to the Fourteenth Amendment to the United States Constitution." *R.* 106 at 25. The district court's reliance on qualified immunity was superfluous; we agree that the defendants provided Rasheed–Bey due process of law, and therefore that no constitutional violation is present in this case. Accordingly, we affirm the district court's judgment on the basis of "no liability" rather than on the basis of qualified immunity.

## II.

The question in this case is whether the process ISP used to impose disciplinary segregation against Rasheed–Bey satisfied the requirements of the Due Process Clause of the Fourteenth Amendment.[6]

---

5. Section 14(B)(8) of the then-applicable Indiana Department of Correction Adult Authority Disciplinary Policy Procedures provided:
> If a case is forwarded to the [CAB], a summary of the facts is to be given to the offender upon the offender's request at least twenty-four (24) hours in advance of the hearing for use in the presentation of the case. Precautions shall be taken, however to prevent the disclosure of information that will jeopardize institutional or individual safety or security or violate statutes relevant to confidentiality of records.

6. Although we question the source of Rasheed–Bey's entitlement to remain in the general pris-

on population, our disposition of this case makes it unnecessary for us to explore the source of his asserted liberty interest. We simply assume that Rasheed–Bey had a liberty interest protected by the Due Process Clause for purposes of this appeal, and therefore express no opinion on the merits of Rasheed–Bey's asserted liberty interest. The district court's memorandum and order following trial noted that Rasheed–Bey must have a protected liberty interest, but did not identify the source of that interest. *See R.* 106 at 21–24. Neither party addressed the issue in their briefs to this court. At oral argument, we questioned Rasheed–Bey's counsel as to the source of Rasheed–Bey's liber-

We believe that it did. The requirements imposed by the Due Process Clause are "flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). We "cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff v. McDonnell,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974). Nonetheless, "a prisoner is not wholly stripped of constitutional protection when he is imprisoned for a crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555–56, 94 S.Ct. at 2974. Accordingly, in considering the command of the Due Process Clause in light of the peculiar exigencies of the prison setting, the Supreme Court has held that an inmate, while not entitled to the full panoply of due process rights accorded to free citizens, is entitled to fundamental protection from the arbitrary action of government. *Wolff,* 418 U.S. at 556–58, 94 S.Ct. at 2974–76; *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871.

Beginning with *Wolff,* the Supreme Court established the minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. Before being deprived of a protected liberty interest, a prisoner is entitled to (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). Inmates have no right to confront and cross examine adverse witnesses; thus, a disciplinary board's decision is not limited to evidence presented at the hearing. *Baxter v. Palmigiano,* 425 U.S. 308, 322–23, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976). Furthermore, this court has held that an inmate is also entitled to disclosure of exculpatory evidence, unless that disclosure would unduly threaten institutional concerns. *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Dawson v. Smith,* 719 F.2d 896, 898–99 (7th Cir.1983). If such information is to remain confidential, it must be supported by some indication of

ty interest and were told that it was "the Due Process Clause itself." The Supreme Court has held that the Due Process Clause does not itself provide an inmate a liberty interest in remaining out of *administrative* segregation, but that state law may create such an entitlement. *Hewitt v. Helms,* 459 U.S. 460, 469–72, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983). In that regard, however, we note that in early proceedings in this case the district court dismissed part of Rasheed–Bey's initial complaint on the basis that Indiana's regulations governing segregation had not created a protected liberty interest. *See* R. 27.

In a recent decision of this court, Judge Posner commented that "a prisoner has no natural liberty to mingle with the general prison population. Only if the state decides to recognize such a liberty—a liberty that is artificial, therefore, rather than natural—does he have a right that he can enforce under the due process clause of the Fourteenth Amendment." *Smith v. Shettle,* 946 F.2d 1250, 1252 (7th Cir.1991) (discussing but not deciding whether the State of Indiana has conferred on its inmates an entitlement not to be placed in administrative segregation); *cf. Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) ("consequences visited on the prisoner that are qualitatively different from the punishment characteristically suffered by a person convicted of crime may invoke the protection of the Due Process Clause even in the absence of a state-created right"); *Wolff v. McDonnell,* 418 U.S. 539, 572 n. 19, 94 S.Ct. 2963, 2982 n. 19, 41 L.Ed.2d 935 (1974) (suggesting similarity between deprivation of good time and imposition of solitary confinement for major misconduct). *Wolff,* established that prisoners have a liberty interest in "good time" credits where the state has created them in the first place. Here, Rasheed–Bey has no state-created right to good time credits with which disciplinary segregation might interfere. Ind.Code § 11–13–3–2(b)(3) (no good time credits extended to prisoners serving life sentences); *see also Hendrix v. Duckworth,* 442 N.E.2d 1058 (Ind. 1982).

reliability. *Mendoza,* 779 F.2d at 1295 (citations omitted).

Rasheed–Bey received all of these procedural protections against arbitrary governmental action. First, he testified that he received a conduct report and an investigative report describing both the money order and the perjury charges. *Tr.* 72, 89; *Ex.* 1,2,4,5. He also received reports of confiscated mail when letters from Dorothy Halley and Eunice Ooten that pertained to altered money orders were intercepted. *Tr.* 40; *Ex.* 9 at 23, 40. Thus, Rasheed–Bey had ample prior notice of the facts underlying his disciplinary charges so that he could prepare a defense to those charges. Second, Rasheed–Bey received sufficient prior notice of both hearings, and was provided a lay advocate who appeared with him at both hearings. *See Ex.* 3, 7; *Tr.* 72. Furthermore, Rasheed–Bey had an opportunity to call witnesses when he was given notice of his disciplinary hearing, but he declined to do so. *Ex.* 4. At Rasheed–Bey's hearing he did not deny that he had sent the letters and money orders to the individuals identified in the conduct reports. Rather, his lay advocate "did most of the talking" and focused on perceived procedural errors. *Tr.* 111. Finally, the CAB issued a written statement of its decision, noting that it had relied on statements from Rasheed–Bey and his lay advocate, the information in Mr. Abbott's report and file number 85–050, and substantiation from federal authorities. *Ex.* 6.[7]

Rasheed–Bey's principal objection to his hearing is that he did not receive the contents of file number 85–050.[8] He mistakenly equates this nondisclosure with not being provided any of the facts upon which his charges were based. *See Dawson v. Smith,* 719 F.2d 896 (7th Cir.1983) (prisoner must have notice of facts on which charges are based so he can prepare a defense). As noted above, however, Rasheed–Bey was notified of the underlying factual bases of his charges through the conduct and investigative reports so that he could prepare a defense to those charges. Furthermore, prison regulations provided Rasheed–Bey an opportunity to request a further summary of Mr. Abbott's investigation, but he did not make that request even though he testified that he was familiar with and had access to the policy manual. *Tr.* 87–88. Finally, the district court concluded that Rasheed–Bey was not entitled to the contents of confidential file number 85–050 because the information therein was not exculpatory and because the information was sufficiently reliable. *See Mendoza,* 779 F.2d at 1293. Our own review of the record in this case provides abundant support for the district court's findings on these related issues. As the district court noted, the file's contents were not patently exculpatory because the evidence (other letters with Rasheed–Bey's name on them regarding altered money orders) was more likely to hurt Rasheed–Bey's case than to help it. Moreover, we are assured of the reliability of the information on which the CAB relied by the CAB's *in camera* review of the file, by the report it received from Mr. Abbott regarding the money order investigation, and generally by the nature and extent of the relationship between postal authorities and prison officials in this ongoing money order investigation. We conclude that the process ISP used to impose disciplinary segregation against Rasheed–Bey satisfied the requirements of the Due Process Clause of the Fourteenth Amendment.

AFFIRMED.

---

7. Rasheed–Bey's protestations regarding his perjury charge are dubious in light of the fact that the CAB found Rasheed–Bey guilty of the "charge of Code 100/111," which is the money order charge rather than the perjury charge. *See Ex.* 1 (money order conduct report noted as charge 100/111); *Ex.* 4 (perjury conduct report noted as charge 152). In addition, at oral argument, Rasheed–Bey's counsel confirmed that Rasheed–Bey's segregation was based on the money order charge.

8. Rasheed–Bey also objected to the fact that he did not get to cross-examine Mr. Abbott. But as noted above, inmates have no constitutional right to confront and cross-examine adverse witnesses. *Baxter,* 425 U.S. at 322, 96 S.Ct. at 1560.