**Robert NELSON, Petitioner,**

v.

**Daniel McBRIDE, Superintendent of the Westville Correctional Center, Respondent.**

No. 3:95–CV–0723 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 17, 1996.

Robert D. Nelson, Westville, IN, pro se.

Martha J. Arvin, Office of Indiana Attorney General, Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This is a challenge under 28 U.S.C. § 2254 to a prison Conduct Adjustment Board ("CAB") proceeding by *pro se* petitioner Robert Nelson. Mr. Nelson is an inmate at the Westville Correctional Center in Westville, Indiana, and filed his petition for writ of *habeas corpus* on September 5, 1995.

## I. BACKGROUND

On March 7, 1995, Mr. Nelson was requested and submitted to a random drug test providing a urine sample, pursuant to the Indiana Department of Corrections Random Urinalysis Program. The sample was submitted to the laboratory for testing. On March 27, 1995, the laboratory reported that the sample had yielded a positive result for cannabinoid or marijuana. This result was confirmed by the laboratory through the use of a gas chromatography/mass spectroscopy ("GC/MS") test.

As a result, a conduct report was written on March 27, charging Mr. Nelson with a violation of Code § 221, the possession, introduction, or use of an unauthorized substance. On March 28, 1995, Mr. Nelson was provided with a copy of the conduct report and received notice of a disciplinary hearing to be held on April 5, 1995. For the hearing, Mr. Nelson requested and was provided a lay advocate, Mr. Dolan Glenn, and did not request any witnesses. At this hearing held before the CAB, Mr. Nelson was found guilty for violating Code § 221. The CAB based its finding on the conduct report, Mr. Nelson's testimony and the laboratory test results. As a result of this conviction, Mr. Nelson was demoted from Credit Class I to Credit Class II and deprived of ninety (90) days of good time credit.

Mr. Nelson appealed the CAB's decision to Superintendent Daniel McBride on April 5, 1995. In this appeal, Mr. Nelson argued that the CAB could not impose a disciplinary sanction against him on the basis of only one

positive test result. Mr. McBride denied Mr. Nelson's appeal on May 1, 1995. Mr. Nelson then filed a belated appeal of the CAB decision to the Indiana Department of Corrections Adult Operations Disciplinary Review Manager, L.A. Ditmer on July 24, 1995. In this second appeal, he claimed that: (1) the conduct report contained the wrong date and time of the drug test; (2) the conduct report was written up over five days after the drug test came back with a positive result in violation of the ADPP; and (3) the guilty finding by the CAB violated the Fourteenth Amendment to the United States Constitution because it did not meet with the mandates set forth in *Woods v. Thieret*, 903 F.2d 1080, 1083 (7th Cir.1990). On July 31, 1995, Mr. Nelson's second appeal was denied because his appeal was not submitted in a timely manner in accordance with the Adult Disciplinary Policy and Procedures ("ADPP"). This decision also informed Mr. Nelson that, "Therefore, you have now exhausted all appeal rights on this case."

Mr. Nelson filed his petition for writ of *habeas corpus* in this court pursuant to 28 U.S.C. § 2254 on September 5, 1995. In his petition, Mr. Nelson alleges that the CAB's finding of guilt was improper in the following ways: (1) the CAB hearing was violative of the Due Process clause because Mr. Nelson claims that he was denied the opportunity to present physical evidence at the CAB hearing; (2) the sanction of a loss of earned credit time affects his "out-date" and violates his rights under the Due Process Clause of the Fourteenth Amendment; (3) the conduct report did not comply with the ADPP as it was written over five days after the drug test, also violating his rights under the Due Process Clause of the Fourteenth Amendment; and (4) his urine sample was improperly taken by a correctional officer and not by a member of the medical staff, thus constituting an illegal search and seizure under the Fourth and Fourteenth Amendments.

The respondent filed the return to order to show cause on October 27, 1995. The return demonstrated the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). On November 7, 1995, Mr. Nelson filed his response in which he restated the claims he raised in his petition.

## II. DISCUSSION

■ There are some basics involved in this court's collateral review of CAB proceedings under § 2254. First, this court must examine this record for alleged constitutional errors. *See Bell v. Duckworth*, 861 F.2d 169 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). Secondly, this court does not sit as a trier de novo in these prison disciplinary proceedings and does not sit as court of general common law review. *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir.1988); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984). Third, this court does not sit merely to determine questions of state law. *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Kraushaar v. Flanigan*, 45 F.3d 1040 (7th Cir.1995).

### A. MARKHAM v. CLARK

■ As a preliminary matter, the interrelation between Mr. Nelson's attempt to appeal his CAB conviction to the Indiana Department of Corrections Adult Operations Disciplinary Review Manager and the requirements of *Markham v. Clark*, 978 F.2d 993 (7th Cir.1992) must be discussed. In *Markham*, the Seventh Circuit, speaking through Judge Posner, indicated that it is axiomatic to federal habeas corpus relief that the petitioner exhaust any available state remedies, before a federal court will review the claim. The *Markham* court explained:

> Federal prisoners are required (by judicial rule, not statute) to exhaust their administrative remedies before they can seek relief under the federal prisoner's habeas corpus surrogate, 28 U.S.C. § 2255. . . . The case for exhaustion of administrative remedies by state prisoners is stronger. Federal courts should not intrude into the relations between a state and its convicted criminals until the state has had a chance to correct its own mistakes. Indiana has established a corrective process for prisoners aggrieved by disciplinary sanctions; we hold that prisoners must use it before turning to the federal courts. Our conclu-

·sion is reinforced by 28 U.S.C. § 2254(c), which provides that 'an applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of [section 2254(b) ], if he had the right under the law of the State to raise, *by any available procedure,* the question presented.'

*Id.* at 995 (emphasis supplied) (citations omitted).

■ Ordinarily, Mr. Nelson's belated appeal to the Adult Disciplinary Review Manager could have served to bar all of his claims in this petition for failing to exhaust his available administrative remedies. But, because Mr. Nelson's belated appeal was received by L.A. Ditmer and Ditmer's decision included the statement, "Therefore, you have now exhausted all appeal rights on this case," the court finds that, in the interests of caution, Mr. Nelson's belated appeal did in fact exhaust his available remedies. Thus, the court will not dismiss the entire petition based upon *Markham.*

■ However, Mr. Nelson's first claim, that the CAB hearing was violative of the Due Process clause because Mr. Nelson claims that he was denied the opportunity to present physical evidence at the CAB hearing, is procedurally defaulted under *Markham.* Mr. Nelson did not raise this issue in either of his two administrative appeals in this case, including in his "Belated Appeal" memorandum that he filed with the Department of Corrections (See Exhibit # 3 of the respondent's "Return To Order To Show Cause) and cannot raise the issue in this court for the first time. *Id.* Because Mr. Nelson did not raise this issue during his state administrative appeals, this claim is dismissed under *Markham.*

### B. RIGHTS UNDER DUE PROCESS CLAUSE

■ Mr. Nelson also claims that the CAB improperly denied him his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by (1) basing its decision in part on a conduct report that was procedurally in error as he alleges it was written over five days after the drug test violating the ADPP and (2) sanctioning him with a deduction of earned credit time. In determining whether a petitioner has grounds for habeas relief under the Due Process Clause, the court must first look to see if a liberty or property interest exists. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). The court must then look to determine if the procedures utilized to deprive the petitioner of life, liberty or property provided due process. *Id.*

■ As to his first claim under the Due Process Clause, Mr. Nelson claims that the CAB deprived him of due process by considering a conduct report that did not follow the requirements of the ADPP. He states that the conduct report was not written up within five (5) days of the alleged misconduct. The court has reviewed the Report of Conduct at issue in this case. The random drug test was ordered on March 7, 1995. The results of this drug test were returned as positive for cannaboid or marijuana on March 27, 1995 and the Report of Conduct was served upon Mr. Nelson on March 28, 1995. The court, therefore, finds that the infraction was not actually known to the prison officials until the results of the test were reported to them, and since the Report of Conduct was delivered within five (5) days of the return of the positive test results, the prison officials did not violate the procedures of the ADPP. Thus, there was no constitutional violation when the CAB relied upon it in part in their decision.

■ Mr. Nelson also challenges the CAB's sanction on his conviction, a loss of ninety (90) days good credit time, as a violation of the Due Process Clause. Good credit time is a liberty interest that cannot be deprived without due process. See *Sandin v. Conner,* —— U.S. —— –––—, 115 S.Ct. 2293, 2301–02, 132 L.Ed.2d 418 (1995) (liberty interest is present where action of the state will inevitably affect the duration of the inmate's sentence). Because a liberty interest is present, the court must inquire whether the requirements that these prison officials must afford Mr. Nelson in his prison disciplinary proceeding under the Due Process

Clause have been sufficiently followed. Due process entitles a prison to receive:

(1) advance (at least 24 hours before hearing) notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (citing *Superintendent, Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974)).

First, the "Notice of Disciplinary Hearing" indicates that Mr. Nelson received notice of the April 5, 1995 hearing on March 28, 1995; clearly more than the required twenty-four (24) hours notice required. Second, Mr. Nelson did appear at the hearing before the CAB on April 5, 1995. Third, Mr. Nelson was provided the opportunity to call witnesses and present documentary evidence. Fourth, the CAB listed the evidence it relied upon in reaching its decision to find Mr. Nelson guilty of the charged violation. Thus, the requirements as set out in *Wolff, supra,* appear to have been satisfied.

Further, due process requires a CAB's findings that result in a deduction of credit time or a demotion in credit time earning class be supported by "some evidence" in the record. *Superintendent,* 472 U.S. at 454, 105 S.Ct. at 2773. The Report of Conduct and the positive lab test results that were confirmed by GC/MS clearly show that the CAB's decision was supported by "some evidence". Thus, for the foregoing reasons, the court finds that the CAB's decision did not violate Mr. Nelson's Due Process rights under the standards of *Wolff* or *Superintendent,* and these claims are now dismissed.

## B. ILLEGAL SEARCH AND SEIZURE

Mr. Nelson next claims that the urine sample for his random drug test was improperly taken by a correctional officer and not by a member of the medical staff, thus constitut-ing an illegal search and seizure violating his rights under the Fourth Amendment. The court construes this argument as one challenging certain portions of the drug-testing procedures at the Westville Correctional Center ("WCC") in Westville, Indiana, and also alleging that the prison officials did not follow the proper procedures in handling the urine taken for his random drug test.

In *Rights of Prisoners,* Mr. Michael Mushlin explains that "required participation in a urine-screening program designed to detect drug use has been upheld numerous times." Mushlin, *Rights of Prisoners* § 8.09 (urinalysis). "Such testing is justified, in the context of prison searches, on the ground that it is a reasonable way to balance the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Id.* It is clear from the cases that the Fourth Amendment proscribes searches that are unreasonable, and a balance generally must be constructed between the intrusion upon the individual's privacy and the government's interests.

The United States Court of Appeals for the Seventh Circuit has visited this issue as well, outlining the parameters of the Fourth Amendment for purposes of a urinalysis test in *Forbes v. Trigg,* 976 F.2d 308 (7th Cir. 1992):

Urine tests are searches for Fourth Amendment purposes, and prison inmates retain protected privacy rights in their bodies, although these rights do not extend to their surroundings. See e.g., *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (no privacy interest in prison cell); *Spence v. Farrier,* 807 F.2d 753, 755 (8th Cir.1986) (urinalysis is search for Fourth Amendment purposes). Moreover, for Fourth Amendment purposes, urinalysis is analogous to body cavity searches and blood tests. *Tucker v. Dickey,* 613 F.Supp. 1124 (D.C.Wis.1985) (urine sample analogous to blood test for Fourth Amendment purposes); *Storms v. Coughlin,* 600 F.Supp. 1214, 1220 (S.D.N.Y.1984). In *Bell v. Wolfish,* the Supreme Court examined the constitutionality of post-visitation body cavity searches. 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1970), and

explained that the basic test for the constitutionality of a search that invades the integrity of an inmate's body is reasonableness. In each case [the Fourth Amendment] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Wolfish*, 441 U.S. at 559, 99 S.Ct. at 1884 (citations omitted). The Court stressed that prison administrators are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547, 99 S.Ct. at 1878. Further, subsequent cases have noted that "the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country." *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir.1986) (citing *Block v. Rutherford*, 468 U.S. 576, 588–89, 82 L.Ed.2d 438, 104 S.Ct. 3227, 3233–34 (1984)).

*Id.*

■ Mr. Nelson maintains that the test was invalid as the prison officials did not follow proper procedures in handling his random drug test when it had a corrections officer collect the sample and not a member of the medical staff. On this issue, this court in *Wykoff v. Resig*, 613 F.Supp. 1504 (N.D.Ind.1985), *aff'd by unpublished order*, 819 F.2d 1143 (7th Cir.1987), evaluated what procedural due process must be attendant upon an institutional CAB's use of the results of a random drug test. This court explained:

> *Wolff* certainly requires that the handling and processing of such inmate samples be done in such a way as to insure the basic integrity of the system. An inmate has a legitimate liberty interest in this subject matter and has a right to expect minimal due process safeguards to insure that samples are not mishandled by correctional officers. Given the realities of the correctional setting, these procedures must be reasonably definite and must be fully and carefully documented at all stages.

Such procedures serve the best interests of the correctional system as well as the limited due process rights of the inmate.

> However, this court, or for that matter, any court, does not have the time to hear complaints based on the inadequate chain of custody for prisoner's urine samples. While the defendants established an adequate chain of custody for plaintiff's urine sample in this particular case, their handling of the same is less than ideal. The Indiana DOC should seal urine samples in the presence of the inmate donor, keep a written record on the location and transportation of urine samples at all times, and while the samples are still in the possession of the DOC, it should store the urine samples in locked refrigerators with very limited access. Furthermore, the minimum due process requirements defined in *Wolff v. McDonnell*, supra, requires that inmates receive a duplicate copy of the EMIT test results from the laboratory which conducted such test.

*Id.* This court is not persuaded that any of the factual allegations outlined in Mr. Nelson's petition contravene any of the parameters outlined in *Wykoff*. *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) and *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Therefore, this court finds that Mr. Nelson's claim of an illegal search and seizure has no merit since he has provided this court with no evidence that the correctional officer improperly handled his sample. Such claim is also now dismissed.

### III. CONCLUSION

The court, for the foregoing reasons, holds that Mr. Nelson's petition pursuant to 28 U.S.C. § 2254 states no claim upon which relief can be granted. Therefore, this petition is hereby **DENIED**.

**IT IS SO ORDERED.**