John B. FELDER, Petitioner–
Appellant,

v.

Daniel R. MCBRIDE, Respondent–
Appellee.

No. 02–3574, 02–3575.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 2004.

Decided Dec. 21, 2004.

John B. Felder, Pendleton, IN, pro se.

Nandita G. Shepherd, Justin F. Roebel, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before CUDAHY, ROVNER, and WOOD, Circuit Judges.

ORDER

Indiana inmate John B. Felder seeks relief under 28 U.S.C. § 2254 from two decisions of a prison disciplinary board that together revoked 120 days of his earned credit time. Felder has a protected liberty interest in these credits, so he may not be deprived of them without the minimum requirements of due process. *Piggie v. McBride,* 277 F.3d 922, 924 (7th Cir.2002) (per curiam); *Montgomery v. Anderson,* 262 F.3d 641, 645 (7th Cir.2001). As relevant here, due process includes advance written notice of the charges, *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), a limited right to call witnesses and produce evidence at an administrative hearing, *id.* at 566–67, 94 S.Ct. 2963, and a decision supported by "some evidence" in the record, *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir.2000). Both of

Felder's petitions were denied because the district courts that reviewed them found that he received all the procedural process that he was due. We consolidated the two appeals that followed.

In the first appeal (no. 02–3574), Felder was being escorted to the showers by correctional officers Rumple and Price. As Felder came out of his cell, he allegedly told Rumple, "I'm going to snatch your punk ass up." Rumple then ordered Felder back into his cell but had to force him inside after Felder refused to enter. Rumple wrote out a conduct report charging Felder with threatening another with bodily harm. Price corroborated Rumple's report (Rumple's report was silent with regard to the timing of events, so we have related the incident as described by Price). Felder pleaded not guilty and requested a lay advocate. He marked on the notice form that he wanted three inmates and a prison nurse to serve as witnesses. In the space reserved for requesting physical evidence, Felder wrote "Request to see that offender did not stop"—apparently in reference to a security camera videotape. Two inmates provided written statements attesting that they overheard Felder and Rumple talking to one another but that Felder did not threaten the officer; another added that he saw Rumple push Felder into his cell. The nurse declined to testify.

At the disciplinary hearing, Felder denied threatening the officers. According to Felder, he could not have made the threat as he came out of his cell, as reported, because if that happened the officers would not have walked him all the way to the showers before turning back in response to the threat. Moreover, he contended, the tape would have shown that he did not stop in front of his cell refusing to enter. A Conduct Adjustment Board ("CAB") found Felder guilty based on the officers' reports. The CAB declined to view the security camera videotape of the incident, reasoning that the tape was irrelevant because it did not have audio. The CAB sanctioned Felder with three months of disciplinary segregation and stripped him of 30 days' earned credit time. Felder sought relief under § 2254, and the district court denied his petition.

On appeal, Felder contends that he was deprived of due process because the CAB refused to examine the videotape of the incident between himself and Rumple. He contends that the videotape would have contradicted the officers' reports, both in that he threatened Rumple as he left his cell and that he refused to re-enter it after being ordered to return. Although Felder is entitled to the disclosure of exculpatory evidence unless doing so would compromise institutional safety or goals, *Piggie,* 277 F.3d at 925; *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992), the basis for the CAB's refusal to view (much less disclose) the videotape implicates neither. The only reason advanced by the CAB for not viewing the tape was the CAB's assumption that it could not reveal whether Felder said anything.

The state asserts that even if the tape discredits the officers' reports, Felder was not entitled to have the CAB consider it because he has no right to confront or cross-examine witnesses. *Rasheed–Bey,* 969 F.2d at 361. But the videotape is more than impeachment evidence, for it goes beyond showing the officers' propensity or character for truthfulness. Instead, the tape goes directly to the sequence of events contained in the officers' reports and challenges whether these particular events ever happened. In this sense the videotape is exculpatory, rather than useful only for purposes of impeachment, because it contradicts the officers' story. And when a prisoner maintains that he was denied a meaningful opportunity to

present a defense due to a CAB's refusal to consider exculpatory evidence, then procedural due process requires a district court to conduct an *in camera* review of the evidence rejected by the CAB to determine whether, in fact, the exculpatory information existed. *Piggie v. Cotton (Piggie II)*, 344 F.3d 674, 678 (7th Cir.2003); *Campbell v. Henman*, 931 F.2d 1212, 1215 (7th Cir.1991) (per curiam). It may be that after viewing the videotape, the court finds that the tape only impeaches the officers rather than exculpates Felder and thus concludes that it was not error to deny him access to it. But due process requires an *in camera* review before such a determination can be made, and we therefore must vacate the order denying relief and remand this appeal to the district court for that purpose.

We turn next to Felder's second appeal (no. 02–3575). In this case, Sergeant Orr alleged that Felder threw a substance through his cell door onto a staff member. Orr opined that two cereal boxes found in Felder's cell could have been used to disperse the substance. Felder was charged with simple battery, and Officer Hanisch swore out an affidavit stating that he went to Felder's cell to notify him of the charge. The screening report shows a request for a lay advocate, and although there is an "x" next to the pre-printed line, "I wish to call the following witnesses," no names are provided. An "x" also appears next to the line, "I do not request any physical evidence." Felder presumably communicated these choices to Hanisch verbally, for the report includes Hanisch's handwritten explanation that Felder was unable to sign it because his cell door was wrapped in Lexan—a hard, clear material used to cover the cells of prisoners charged with throwing things.

At his disciplinary hearing, Felder denied throwing anything through his cell door. He asked that the CAB view a security camera videotape of the incident that he maintains would show that nothing was thrown from his cell. He also asked the CAB to secure a witness statement from an officer who was in the area at the time. The CAB denied both requests on the ground that he had not asked for this evidence when notified of the charge. The CAB found Felder guilty based on Orr's report and sanctioned him with six months' disciplinary segregation, the loss of 90 days' earned credit time, and two months' phone privileges. Felder once again sought relief under § 2254.

Felder's second appeal presents an issue nearly identical to the first. He argues that the CAB deprived him of due process when it refused to examine a videotape that he says would show he did not throw anything through his cell door. Although the CAB need not explain at the hearing why it denied an inmate's request for exculpatory evidence, the state has the burden of demonstrating that its denial was not arbitrary or capricious. *Piggie*, 277 F.3d at 925. But if an inmate fails to request such evidence "either before or at the hearing, then the CAB could not have denied him due process by not considering the request." *Id.*

Felder maintained both on administrative appeal and in his § 2254 petition that he asked the CAB to view the videotape at the hearing. The state cites the CAB's report, which notes simply "No evidence requested by offender," as evidence of Felder's failure to make such a request. The problem of whether or not Felder asked the CAB to view the videotape is compounded by his allegation that he was not actually notified of the charges against him and thus not given the opportunity to request evidence before the hearing. *See Wolff*, 418 U.S. at 564, 94 S.Ct. 2963. If Felder was denied the exculpatory video-

tape evidence when he asked for it at the hearing, or if he was not given a chance to request it beforehand, then his defense would have been impermissibly compromised. *See id.* at 566–67, 94 S.Ct. 2963; *Piggie,* 277 F.3d at 926.

Although Felder raised the issues surrounding his request for evidence in his § 2254 petition, the district court did not address them. Therefore, we vacate the order denying relief and remand the case for the court to resolve the inconsistencies between the versions of events advanced by Felder and the state. On remand, the court should first conduct an *in camera* inspection of the videotape. If the tape is exculpatory (or no longer exists), then the court must consider whether Felder was properly informed of the charges against him and whether he made a timely request for the videotape either before or at the hearing. *See Piggie,* 277 F.3d at 926. If the videotape is either exculpatory or has been erased, and the court finds that Felder made a timely request for the CAB to view the tape or was denied the opportunity to do so, then habeas corpus relief must be granted. *See id.*

The judgments of the district courts are VACATED and the cases are REMANDED for further proceedings consistent with this order.