**Willie DIXON, Appellant**

v.

**Don BOTTOM, Warden, Northpoint Training Center, Appellee**

NO. 2015-CA-000618-MR

Court of Appeals of Kentucky.

RENDERED: JULY 29, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Willie Yuvell Dixon, pro se, Burgin, Kentucky

BRIEF FOR APPELLEE: Linda M. Keeton, Frankfort, Kentucky

BEFORE: ACREE, J. LAMBERT, AND MAZE, JUDGES.

## OPINION

MAZE, JUDGE:

Appellant, Willie Dixon, appeals from a Boyle Circuit Court order denying his Petition for Declaration of Rights. As the record lacks sufficient evidence to establish that Dixon's due process rights were violated, we affirm.

### Background

On August 21, 2014, Dixon was involved in an altercation with three officers at the Franklin County Regional Jail. During the altercation, Dixon refused to comply with the officers' orders and said, "don't anybody put their f***ing hands on me." In response, one of the officers, Lieutenant Gash, reached an open hand toward Dixon's chest and Dixon responded by shoving Lieutenant Gash backwards. A struggle ensued between Dixon, Lieutenant Gash, and two other officers, Captain Wright and Corporal Ray. Corporal Ray used his taser to subdue Dixon. Dixon was eventually secured with hand restraints and removed from the area. During the altercation, Captain Wright suffered a sprained ankle and swelling in his hand. Lieutenant Gash received a laceration to his right cheek.

As a result, Dixon was charged administratively with "Physical Action Against an Employee or Non-Inmate." After the altercation, Dixon was transferred to Northpoint Training Center where his disciplinary hearing was held. An Adjustment Officer (AO) found Dixon guilty of the disciplinary violation and penalized him by revoking 730 days of nonrestorable good time credit, revoking 39 days of credit for time served, and imposing 180 days of disciplinary segregation. Dixon appealed these penalties to the Warden, who amended the penalty to 90 days of disciplinary segregation and 365 days of nonrestorable good time credits lost. On January 15, 2015, Dixon filed a Petition for Declaration of Rights in Boyle Circuit Court. That court denied Dixon's Petition on March 2, 2015, and this appeal followed.

### Standard of Review and the "Some Evidence" Standard

We will disturb the trial court's findings of fact only if they are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01; *Cherry v. Cherry,* 634 S.W.2d 423 (Ky.1982). A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to "induce conviction in the mind of a reasonable person." *Hunter v. Hunter,* 127 S.W.3d 656, 659 (Ky.App.2003); *see also Sherfey v. Sherfey,* 74 S.W.3d 777, 782 (Ky.App.2002). Questions of law are reviewed *de novo. Carroll v. Meredith,* 59 S.W.3d 484, 489 (Ky.App.2001). Additionally, the United States Supreme Court has established the "some evidence" standard as the standard for reviewing a prison disciplinary board's decision to revoke good time credits. *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445,

455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The "some evidence" standard is met if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

## Analysis

On appeal, Dixon makes three arguments. His first argument is that the "some evidence" standard articulated in *Hill* was not met because the officers used physical force against him and because no medical records, pictures, camera footage, or documentation of any hospital reports existed. Second, Dixon argues that if the video evidence did exist, the AO did not review it as Dixon requested. Dixon's final argument is that the trial court wrongly charged and overcharged him for a filing fee on his petition and appeal. We will discuss each of Dixon's arguments in turn.

■ First, Dixon contends that the "some evidence" standard articulated in *Hill* was not met. Dixon states that he requested video footage of the incident, medical reports, and pictures of the injuries but that no documentary evidence was provided to him. Because the documentary evidence was not provided to him, Dixon believes that the "some evidence" standard was not met and his due process rights were violated.

The United States Supreme Court, in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that inmates are entitled to advance written notice of the charges against them, the opportunity to "call witnesses and present documentary evidence in [their] defense when permitting [them] to do so will not be unduly hazardous to institutional safety or correctional goals[,]" (418 U.S. at 566, 94 S.Ct. at 2979) and a "written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action." (*Id.* at 564, 94 S.Ct. at 2979). Addi-

tionally in *Hill, supra,* the United States Supreme Court cited *Wolff* and explained that *Wolff* did not require a specific "quantum of evidence." *Hill,* 472 U.S. at 454, 105 S.Ct. at 2773. The Court held that,

the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced...' *United States ex rel. Vajtauer v. Commissioner of Immigration[ at Port of New York],* 273 U.S. [103] at 106, 47 S.Ct. 302[, 71 L.Ed. 560 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–456, 105 S. Ct. at 2774. The Court in *Hill* found that the testimony from a prison guard and copies of a written incident report were sufficient to meet the some evidence standard in that particular case.

In the present case, Dixon had advance notice of the charges against him. The record indicates that an Investigating Officer read the incident report to Dixon and asked Dixon if he had any comments. Dixon's response was that he wanted the videotape of the incident and that the officer "put his hands on him [Dixon] first." Also included in the record was an Incident/Arrest Report written by Captain Wright describing the incident and the injuries sustained. The AO passed the hearing seven days in order to obtain the requested video surveillance footage. The AO cited her reasons for finding Dixon guilty in the Disciplinary Report after the hearing.

Therefore, the three elements required under *Wolff* were met. The standard articulated in *Hill* was also met. Not only was there an Incident/Arrest Report by Captain Wright, but also Dixon's own admissions established that an altercation occurred due to Dixon's refusal to follow orders. Nothing in the record suggests that Dixon requested documentary evidence. He only requested the video footage. However, even without other documentary evidence (such as medical reports, etc.), the Incident/Arrest Report and Dixon's own statements are sufficient to meet the "some evidence" standard.

█ Dixon's second argument is that if the video surveillance did exist, the AO did not review it, as he requested. In *Ramirez v. Nietzel*, 424 S.W.3d 911, 920 (Ky.2014), the Kentucky Supreme Court held "that an AO must review security footage if an inmate requests such review." Expressly adopting law set out in a Seventh Circuit case, our Supreme Court further declared that

> "[w]hen a prisoner maintains that he was denied a meaningful opportunity to present a defense due to [an AO's] refusal to consider exculpatory evidence, then procedural due process requires a [circuit] court to conduct an *in camera* review of the evidence" to determine whether it was indeed exculpatory and whether, in light of the new evidence, "some evidence" existed for the AO's finding of guilt.

*Id.* (quoting *Felder v. McBride*, 121 Fed. Appx. 655, 656–57 (7th Cir.2004)).

The dissent contends that the Supreme Court's analysis in *Ramirez* required the circuit court in this case to review the video footage involved, and that its failure to do so denied Dixon his right to proce-

dural due process of law. In addition to *Ramirez*, our colleague cites a recent decision of this Court involving an AO who failed to reference the surveillance footage in her findings, leaving the question of whether she reviewed the footage unresolved. *See Lawless v. Conover*, 2015–CA–000039,—— S.W.3d ——, 2016 WL 2981580 (Ky.App. May 20, 2016).[1] A majority of the panel in *Lawless* held that the AO and the circuit court failed to comply with the procedure prescribed in *Ramirez*, and that on remand, the circuit court was required to conduct a review of the footage.

For the same reasons voiced in the dissent in *Lawless*, we respectfully disagree with our dissenting colleague concerning the circuit court's responsibility to review the surveillance footage in light of *Ramirez*. *Ramirez* only requires such fact-finding on the part of the circuit court following "[an AO's] refusal to consider exculpatory evidence[.]" 424 S.W.3d at 920 (quoting *Felder v. McBride*, 121 Fed.Appx. at 656–57). That was not the case here.

The AO did not refuse to review the surveillance footage like the AO in *Ramirez*, nor did she fail to reference her review of it, as the AO did in *Lawless*. To the contrary, the record indicates that she went out of her way to review it, delaying the hearing seven days to accommodate its arrival from the Jail; and she twice referenced her review of the video, stating that "the incident was seen on video" and that her decision to affirm Dixon's conviction was based on a review of "all the evidence." We cannot possibly overstate the importance of these facts. They not only combine to support the trial court's finding that the AO reviewed the video surveillance. More importantly, they establish that Dixon was not denied his right to present exculpatory evidence, and hence,

---

1. This case is currently before the Kentucky Supreme Court on a Motion for Discretionary review; hence, it is not final as of rendition of this opinion.

the dictates of procedural due process did not compel the circuit court to undertake additional review of that evidence.

Lastly, we see nothing in the record to indicate vindictive, retaliatory, or selective prosecution in the court's decision to charge Dixon for his filing fees. In fact, there is substantial evidence to support the finding that Dixon could afford to pay at least the required filing fees. Hence, we affirm this portion of the trial court's order without further discussion.

### Conclusion

Accordingly, the Boyle Circuit Court order denying Appellant's Petition for Declaration of Rights is affirmed.

JUDGE J. LAMBERT CONCURS.

JUDGE ACREE DISSENTS AND FILES SEPARATE OPINION.

JUDGE ACREE, DISSENTING:

Respectfully, I dissent. I do so for the reasons expressed in *Lawless v. Conover*, 2015–CA–000039–MR, —— S.W.3d ——, 2016 WL 2981580 (Ky.App. May 20, 2016), *motion for disc. rev. filed* (Ky. June 16, 2016) (2016-SC-000320). In that case, this Court relied on the Kentucky Supreme Court's reasoning in *Ramirez v. Nietzel*, which held:

> "When a prisoner maintains that he was denied a meaningful opportunity to present a defense due to [an AO's] refusal to consider exculpatory evidence, then procedural due process requires a [circuit] court to conduct an *in camera* review of the evidence" to determine whether it was indeed exculpatory and whether, in light of the new evidence, "some evidence" existed for the AO's finding of guilt.

424 S.W.3d 911, 920 (Ky.2014) (quoting *Felder v. McBride*, 121 Fed.Appx. 655, 656–57 (7th Cir.2004)). Again, "procedural due process requires a [circuit] court to conduct an *in camera* review of the evidence" which, in cases such as this, means "[t]he circuit court should review the security footage *in camera*[.]" *Ramirez* at 920. That step in procedural due process appears not to have occurred in this case.

There is good reason to believe the circuit court's review of the videotape would not have exculpated Willie Dixon. I do not dissent for Willie Dixon's sake. I dissent because due process must exist independent of the facts of any particular case. Only by assuring its uniform and universal application do we have any hope that due process will protect the innocent.