Michael MEEKS, Petitioner–Appellant,

v.

Daniel R. McBRIDE, and Attorney General of the State of Indiana, Respondents–Appellees.

No. 95–2014.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1996.

Decided April 17, 1996.

Allen E. Shoenberger, John MacInerney, Law Student (argued), Loyola University School of Law, Chicago, IL, for Petitioner-Appellant Michael Meeks.

James D. Dimitri (argued), Indiana Department of Corrections, Legal Services Division, Indianapolis, IN, for Respondent-Appellee Daniel R. McBride.

Pamela Carter, Office of the Attorney General, Indianapolis, IN, Respondent-Appellee Pro Se.

Before KANNE, ROVNER, and DIANE P. WOOD, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Michael Meeks, an inmate of the Westville Correctional Center ("Westville") in Westville, Indiana, filed this petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging the prison disciplinary board's decision to deprive him of good-time credits and to lower his good-time credit earning class. At the close of the second of two hearings, the disciplinary board imposed these sanctions after finding that Meeks had smoked marijuana in contravention of prison rules. Meeks contends that the board's decision was not supported by "some evidence" in the record as required by due process, *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), and that the second hearing violated his rights under the Double Jeopardy Clause. The district court denied Meeks' petition and he appealed. Although we find no merit to Meeks' double jeopardy argument, we agree that the evidence relied on by the prison disciplinary board in support of its decision was insufficient to link him to the alleged misconduct. We therefore reverse.

## I. BACKGROUND

On August 12, 1994, while making the evening rounds at the Westville dormitories, Officer L. Heilman allegedly observed Michael Meeks and another inmate smoking what he believed to be a marijuana cigarette. Heilman attempted to open the door to Meek's room, but found it locked. Heilman observed Meeks put something in his mouth and swallow it. After opening the door, Meeks allegedly went over to a window and blew smoke outside. In the meantime, Heilman searched the other inmate and confiscated what appeared to be two marijuana cigarettes in his possession. Heilman then filed a written Report of Conduct, bearing Meeks' correct prisoner number 932408, charging that Meeks had violated Adult Disciplinary Policy Procedures Code 221, which proscribes the possession or use of any unauthorized narcotic drug or controlled substance by a prison inmate. A copy of the report was given to Meeks on August 17, 1994.

The same day that he received the conduct report, Meeks was required to submit to a urine test to detect the presence of illegal drugs. A toxicology report was returned from the testing laboratory on August 30, 1994. The report stated that a urine sample taken from a Michael Meeks, prisoner num-

ber 942283, on August 17, 1994, had tested positive for the presence of marijuana. In light of that result, M.E. Reeves, who is the coordinator of the random drug testing program at Westville and was responsible for collecting the urine sample analyzed in the toxicology report, prepared a second Report of Conduct on September 1, 1994, charging Meeks with using an unauthorized drug or controlled substance in violation of Code 221. The second Report of Conduct originally bore the same prisoner number as that given in the toxicology report, number 942283. That number was later changed to reflect Meeks' prisoner number, 932408. When this change was made is not, however, entirely clear from the record. Meeks received a copy of the second conduct report on September 7, 1994.

On September 12, 1994, the Conduct Adjustment Board (CAB) held a disciplinary hearing to consider the charge brought against Meeks by Officer Heilman in the first Report of Conduct. After considering the report and Meeks' own testimony denying that he was smoking marijuana when Heilman observed him, the CAB found Meeks not guilty due to lack of evidence. Later that same day, the CAB held another disciplinary hearing to consider the second Report of Conduct, initiated against Meeks as a result of the toxicology report that had indicated the presence of marijuana metabolites in the urine sample believed to have been collected from Meeks on August 17, 1994. This time, the CAB concluded that Meeks was guilty of illicit drug use in violation of Code 221 on the basis of the laboratory test result. The CAB sanctioned Meeks by depriving him of ninety days of earned good-time credit and demoting him from credit class II to credit class III, thus preventing him from earning good-time credits in the future. Two subsequent administrative appeals, in which Meeks contended that the urine sample had been mislabeled and did not belong to him, and that he had been wrongly disciplined on a previous occasion due to being confused with another inmate also named Michael Meeks, were denied.

Meeks then filed the present petition for a writ of habeas corpus, contending that (1) he was deprived of a protected liberty interest in earned good-time credits and credit earning class without due process of law because the CAB's decision was not supported by "some evidence," and (2) his rights under the Double Jeopardy Clause were violated when the CAB convicted him of marijuana use following the second disciplinary hearing, after deciding to acquit him of the very same charge at the first hearing. Although expressing concern at the possibility that the urine sample had been mislabeled, the district court determined that Meeks' constitutional rights had not been violated, and denied Meeks' petition. This appeal followed.

## II. DISCUSSION

Both parties agree that under Indiana law, state prison inmates have a protected liberty interest in earned good-time credits and in credit earning class, Ind.Code §§ 35–6–3, 35–6–4 (1988), and that the state may not deprive inmates of good-time credits without following constitutionally adequate procedures to insure that the credits are not arbitrarily rescinded. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In *Hill*, the Supreme Court held that the "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." 472 U.S. at 454, 105 S.Ct. at 2773 (quoting *Wolff*, 418 U.S. at 558, 94 S.Ct. at 2976). The Court further explained that, in ascertaining whether this standard has been met, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good-time credits has some factual basis. *Id.* at 455–56, 105 S.Ct. at 2774. Under this standard, the evidence need not "logically preclude[ ] any conclusion but the one reached by the disciplinary board." *Id.* at 457, 105 S.Ct. at 2775. Indeed, in the context of a prison disciplinary proceeding, due process is satisfied as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.*

As this court observed in *Viens v. Daniels,* 871 F.2d 1328 (7th Cir.1989), because the "some evidence" standard in *Hill* does not permit courts to consider the relative weight of the evidence presented to the disciplinary board, it is "general[ly] immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied" in support of its conclusion. *Id.* at 1335. Thus, although we do not consider exculpatory evidence merely because it could have supported a different result from that reached by the board, we must nevertheless satisfy ourselves that the evidence the board did rely on presented "sufficient indicia of reliability" to permit us to conclude that its decision to revoke an inmate's good-time credits was not arbitrary. *Id.; see also Lenea v. Lane,* 882 F.2d 1171, 1176 (7th Cir.1989); *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987). Moreover, where a prison inmate produces exculpatory evidence that directly undermines the reliability of the evidence in the record pointing to his guilt, he is "entitled to an explanation of why the [disciplinary board] disregarded the exculpatory evidence and refused to find it persuasive." *Whitford v. Boglino,* 63 F.3d 527, 537 (7th Cir.1995) (*per curiam*); *see Viens,* 871 F.2d at 1335.

In this appeal, Meeks contends that the CAB's decision to revoke his good-time credits and lower his credit earning class for using marijuana violated his right to due process because it was based on unreliable evidence. To substantiate this claim, Meeks first points out that the CAB's decision was based solely on the toxicology report that indicated a positive urine test for the presence of marijuana metabolites. Meeks then directs our attention to two specific instances of unreliable identifying information in the report—the prisoner number, and the fact that his initials are absent from the report. Although the report bears Meeks' name, Meeks has established that he was not the only "Michael Meeks" at Westville · at the time this sample was obtained, and that he had been confused with the other Michael Meeks on one previous occasion, resulting in a disciplinary sanction (the denial of tele-

phone privileges) which prison administrators conceded was mistakenly imposed. It is important to note that Meeks does not dispute that he submitted a urine sample on August 17, 1994, the same day as is indicated in the toxicology report, and that M.E. Reeves collected the sample from him on that day. Nor does Meeks dispute the accuracy of the laboratory test results. In other words, Meeks does not challenge the basic facts of the urine test as determined by the CAB—he only contends that this particular urine sample did not belong to him, and points to specific evidence, including evidence on the face of the toxicology report itself, in support of his contention. Because Meeks has therefore produced exculpatory evidence that directly negates the reliability of the evidence used by the disciplinary board to reach its decision, we may consider it in determining whether that decision violated Meeks' due process rights. *See Viens,* 871 F.2d at 1335.

The state asserts that in determining Meeks' culpability, the CAB considered not only the positive toxicology report, but also the second Report of Conduct, which was completed by Reeves. The state further maintains that the prisoner number appearing in the toxicology report was merely an inadvertent error on Reeves' part, and that Reeves knew Meeks, recalled obtaining a urine sample from Meeks, and changed the prisoner number in the second Report of Conduct to reflect Meeks' number as soon as he perceived the discrepancy. Yet the state concedes that the second Report of Conduct charging Meeks with marijuana use is an administrative document that was filled out exclusively on the basis of the information contained in the toxicology report, and was no more accurate than the report. Indeed, Meeks claims that the prisoner number in the Report of Conduct was changed to his prisoner number only after he appeared at the second disciplinary hearing, and the state does not dispute this. Moreover, the first Report of Conduct, in which Heilman claims to have observed Meeks smoking marijuana with another inmate, had already been rejected as unpersuasive in the first disciplinary hearing and was not introduced into evi-

dence at the second one. Thus, as the state's counsel conceded at oral argument, the only substantive evidence of Meeks' marijuana use that the CAB considered at the second disciplinary hearing was the toxicology report itself.

■ The state contends that the name on the face of the toxicology report, combined with the date and the chain of custody information, is sufficient to establish that the report corresponds to the sample provided by Meeks. There are several difficulties with this argument. First, we are aware that at least one other inmate at Westville has the same name as petitioner, and that confusion between the two inmates was more than a theoretical possibility, since it occurred on a previous occasion and resulted in disciplinary sanctions being wrongly imposed on Meeks. Furthermore, in view of the fact that the prison knew that Meeks' challenge to the toxicology report rested primarily on the discrepancy in inmate numbers, the record is conspicuously devoid of any corroborating information that would lend credence to the state's position. If, for example, only a small number of urine samples had been processed by Reeves on August 17, 1994, the fact that the report bears Meeks' name and the date of the test would provide some circumstantial evidence that the sample did indeed come from Meeks. *Cf. Hamilton v. O'Leary,* 976 F.2d 341, 345–46 (7th Cir.1992) (weapons found in cell occupied by petitioner and three other cellmates, combined with prison's constructive possession rule, sufficient to establish petitioner's guilt). We do not, however, know how many urine samples were processed by Reeves that day, and thus cannot determine the relative probability that this particular sample was obtained from Meeks. *See id.* Although we do know that the prisoner number on the face of the toxicology report, 942283, differed in four of six digits from Meeks' number, 932408, we do not know the prisoner number of the other Michael Meeks, and are thus unable to compare it with the number on the face of the report.[1] As for the state's assertion that Meeks' ini-

tials appear in the chain of custody, the markings on the face of the report that the state has identified simply do not appear to be anyone's initials. In any case, they are as likely to correspond to the other Michael Meeks as they are to petitioner.

The record is equally devoid of any explanation as to why the CAB disregarded the exculpatory evidence produced by Meeks and found it to be unpersuasive. *See Whitford,* 63 F.3d at 537. In response to Meeks' administrative appeal, Superintendent Dan R. McBride stated that Meeks was tested on August 17, 1994 by Reeves and that Reeves knows him. Meeks never disputed this. McBride also stated that the discrepancy in prisoner number is an error that can be corrected, presumably at the sole discretion of the prison. This statement is neither explanatory, nor sufficient to meet the precise challenge to the reliability of the evidence asserted here. The issue is whether the positive toxicology report corresponds to the urine sample submitted by Meeks, or whether it corresponds to a sample submitted by another inmate—to assert that the number in the report should be changed to reflect Meeks' number is merely to assume what is in dispute, not to explain why Meeks' challenge to the reliability of the report, insofar as it links *him* to that sample, should fail. As we have discussed above, corroborating evidence that would tend to show that the report constitutes reliable evidence of Meeks' guilt is simply missing. Thus, in light of the discrepancy in the identifying information on the face of the toxicology report, and the fact that no explanation for that discrepancy has been offered, we conclude that the report lacks sufficient indicia of reliability to support the CAB's decision. Meeks was therefore deprived of his good-time credits and demoted in credit earning class in violation of his right to due process. *See Hill,* 472 U.S. at 454, 105 S.Ct. at 2773.

■ Meeks also contends that the second disciplinary hearing, which was held immediately after his acquittal at the first, violated his rights under the Double Jeopardy Clause.

---

1. Nor does the record reveal whether the other Michael Meeks submitted to a urine test on August 17, 1994, or whether the inmate who was assigned prisoner number 942283 submitted to a urine test on that date.

Meeks' argument is somewhat puzzling, since the record does not demonstrate, nor did the state ever contend, that the two charges of illegal drug use in violation of Adult Disciplinary Policy Procedures Code 221 stemmed from the same instance of marijuana use on Meeks' part. On the contrary, the state has asserted that "there is no evidence in the record demonstrating that Meeks' urinalysis test results were positive *because* of the incident giving rise to the first charge against him." (Appellee's Br. at 18.) (emphasis in original).[2] More fundamentally, however, Meeks' position is without merit because the Double Jeopardy Clause does not apply to prohibit the successive prison disciplinary proceedings at issue in this case.

 Our court and numerous others have held that a prison disciplinary proceeding is no bar to a subsequent criminal prosecution for the same offense. *See Garrity v. Fiedler*, 41 F.3d 1150, 1152–53 (7th Cir.1994) (collecting cases), *cert. denied,* —— U.S. ——, 115 S.Ct. 1420, 131 L.Ed.2d 303 (1995); *United States v. Brown*, 59 F.3d 102 (9th Cir.1995) (*per curiam*); *United States v. Newby*, 11 F.3d 1143 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1841, 128 L.Ed.2d 468, *and cert. denied,* —— U.S. ——, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994). For a stronger reason, an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge. As the Supreme Court observed in *Hill*, "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." 472 U.S. at 456, 105 S.Ct. at 2774 (citing *Wolff*, 418 U.S. at 562–63, 567–69, 94 S.Ct. at 2977, 2980–81). And as was pointed out at oral argument, to apply double jeopardy protection to prohibit a subsequent disciplinary hearing after acquittal would impose an extreme burden on prison administrators. If an acquittal in an earlier hearing were to preclude a subse-

quent hearing on the same charge, the overriding interest of prison administrators to act swiftly to maintain institutional order could be compromised in the interest of developing the evidence needed to obtain a conviction. *See Newby*, 11 F.3d at 1146 (if prison disciplinary sanction were to bar subsequent criminal prosecution, prison authorities would be forced to choose between the two, and to forego prompt resolution of disciplinary charges). We therefore reject Meeks' double jeopardy claim.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's decision denying Meeks' petition for a writ of habeas corpus, and REMAND with directions to grant the petition.

---

2. Indeed, if the first Report of Conduct containing Heilman's observations of suspected marijuana use by Meeks were considered in conjunction with the positive toxicology report, the two together would constitute "some evidence" of Meeks' guilt under *Hill*. As we have explained

above, however, at Meeks' first disciplinary hearing the CAB determined that the evidence contained in the first Report of Conduct was not credible. The CAB thus did not consider that evidence at Meeks' second hearing.