In the
United States Court of Appeals
For the Seventh Circuit

No. 97-3264

JAMES L. WEBB,

Petitioner-Appellant,

v.

RON ANDERSON, Superintendent,
Indiana State Prison,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 97 C 337--Allen Sharp, Judge.

Argued September 14, 1999/*--Decided August 16, 2000

Before BAUER, ROVNER and EVANS, Circuit Judges.

ROVNER, Circuit Judge.  James L. Webb, an inmate of the Indiana State Prison, lost 90 days of good time credit when prison authorities determined that he had used marijuana based on a positive urinalysis. After exhausting his administrative remedies, Webb filed a petition for a writ of habeas corpus, arguing that because prison officials failed to maintain an adequate chain of custody for the urine specimen, their disciplinary decision lacks "some evidence" to support it. See Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445, 105 S. Ct. 2768 (1985). We conclude that the omissions in the chain of custody form and toxicology report at issue in this case are not so serious as to preclude the prison's reliance on them; together, the two documents constitute "some evidence" that Webb used marijuana, and that is all that the Due Process Clause of the Fourteenth Amendment, as construed by the Supreme Court, requires.

I.
  The Indiana State Prison randomly tests its inmates for drug and alcohol use. At 4:30 a.m. on March 9, 1996, the prison facility at Michigan City collected a urine sample from Webb. The chain of custody slip confirms that the sample was sealed in Webb's presence: it bears his

initials as well as the name of the collecting officer. R.6 Ex. A3; see also id. Ex. A2. The parties agree that two subsequent entries on the custody slip reflect that the specimen arrived at the laboratory of a local hospital on March 12, still with the seal intact. A March 15 toxicology report, bearing Webb's name and prisoner number and the same toxicology number as the chain of custody form, indicates that the specimen was analyzed on March 13 and tested positive for cannabinoids, the active narcotic agent in marijuana. R.6 Ex. A3. Neither the toxicology report nor the chain of custody form, however, identifies the technician who tested the specimen, nor does either document confirm that the specimen remained sealed until it was tested. The prison received the test results on March 25. R.6 Ex. A2.

Based on the lab report, the prison charged Webb with the unauthorized use of a narcotic drug. R.6 Ex. A4. Webb contested the charge, asserting that "[t]here is no certified chain of custody, and there is no name as to who did the test." R.6 Ex. A5. A hearing took place on April 1, 1996. There, with the assistance of a lay advocate, Webb reiterated his challenge to the sufficiency of the evidence. The hearing officer nonetheless found him guilty of the charge, "[b]ased on the test results," and recommended that the prison deprive him of 90 days' credit for good time. R.6 Ex. A5. A reviewing officer found no reason to disturb either the finding that Webb had used marijuana or the recommended sanction. That officer explicitly rejected Webb's assertion that the chain of custody had been broken, reasoning that the handling of his specimen was adequately documented on the toxicology form. R.6 Ex. A7. A final review by a disciplinary review manager likewise rejected Webb's argument. R.6 Ex. A9. Indiana does not provide for state-court review of prison disciplinary decisions, Hasty v. Broglin, 531 N.E.2d 200 (Ind. 1988), so at this point Webb had exhausted his state remedies.

Webb filed a habeas petition alleging that the prison had violated his right to due process. The district court denied Webb relief, concluding that the evidence underlying the disciplinary decision satisfied the standard articulated in Hill, 472 U.S. at 454, 105 S. Ct. at 2773. R.9, Webb v. Parke, No. 97 C. 337, Order at 2 (N.D. Ind. Aug. 7, 1997)./1

II.
A.

When a state prisoner faces the loss of good time credits for alleged misconduct, he is

entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause [of the Fourteenth Amendment] to insure that the state-created right is not arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557, 94 S. Ct. 2963, 2975 (1974). Among other things, the "minimum requirements of procedural due process" (id. at 558, 94 S. Ct. at 2976) demand that the findings of a prison disciplinary board have the support of "some evidence in the record." Hill, 472 U.S. at 454, 105 S. Ct. at 2773. This is a lenient standard, see Lenea v. Lane, 882 F.2d 1171, 1175 (7th Cir. 1989), requiring no more than "a modicum of evidence." Hill, 472 U.S. at 455, 105 S. Ct. at 2774. Even "meager" proof will suffice, so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Id. at 457, 105 S. Ct. at 2775; see also Lenea, 882 F.2d at 1175 ("Although 'some evidence' is not much, . . . it still must point to the accused's guilt."). It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision. Hill, 472 U.S. at 455, 105 S. Ct. at 2774; see also Meeks v. McBride, 81 F.3d 717, 720 (7th Cir. 1996), citing Viens v. Daniels, 871 F.2d 1328, 1335 (7th Cir. 1989). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56, 105 S. Ct. at 2774 (emphasis ours).

The toxicology report and the chain of custody slip constitute "some evidence" supporting the decision to impose disciplinary sanctions upon Webb. The parties agree that the chain of custody slip confirms the collection of the urine sample from Webb and sealing of that specimen, the transmission of the specimen to the hospital laboratory, and the receipt of the sample by the hospital in sealed condition. The toxicology report, which bears Webb's name and prisoner number and the same toxicology number as the chain of custody form,/2 in turn reveals that the sample was analyzed within roughly twenty-four hours after it arrived at the hospital and that Webb's urine tested positive for cannabinoids. Together, these documents establish that Webb's sample was delivered to the hospital in sealed condition, that the hospital laboratory tested the sample, and that the analysis revealed Webb's use of marijuana.

We regard the two omissions in the documentary trail as significant, but not so material as to preclude prison officials from relying on the documents as evidence of Webb's marijuana usage. Notwithstanding the omission of the name of the

technician who tested Webb's specimen, there is no reason to doubt that the laboratory actually analyzed the sample: the toxicology report lays out the various substances for which Webb's urine was screened and the results for each. Similarly, although the chain of custody form does not confirm that Webb's specimen reached the technician in a sealed condition, the record gives us no reason to suspect that the specimen may have been opened and tampered with during the twenty-four hour period between its arrival at the hospital on March 12 (at which point we know that it was still sealed) and its testing on March 13. The gap in the chain of custody form and the anonymity of the technician who analyzed Webb's sample certainly leave room for the possibility that the sample was mishandled in some way; conversely, filling in those omissions would render that possibility more unlikely and enhance the reliability of the test results. Yet:

The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.

Hill, 472 U.S. at 457, 105 S. Ct. at 2775; see also Mackey v. Montrym, 443 U.S. 1, 13, 99 S. Ct. 2612, 2618 (1979); Higgs v. Bland, 888 F.2d 443, 449 (6th Cir. 1989). Absent some affirmative indication that a mistake may have been made, e.g. Meeks, 81 F.3d at 721 (prisoner number on toxicology report did not match petitioner's number, another prisoner had same name as petitioner, and the two prisoners had been confused before), we cannot say that the toxicology report and chain of custody form fail to qualify as "some evidence" from which prison officials could conclude that Webb had used marijuana. See United States v. Brown, 136 F.3d 1176, 1182 (7th Cir. 1998) (hypothetical possibility of tampering does not render evidence inadmissible, but goes instead to the weight of the evidence)./3

B.

   When Webb filed this appeal, he was required to pay a filing fee pursuant to 28 U.S.C. sec. 1915(b), as amended by the Prison Litigation Reform Act of 1996 ("PLRA"), and this court's opinions in Newlin v. Helman, 123 F.3d 429, 437–38 (7th Cir. 1997), cert. denied, 522 U.S. 1054, 118 S. Ct. 707 (1998), and Thurman v. Gramley, 97 F.3d 185, 187 (7th Cir. 1996). See R.18. In relevant part, Newlin and Thurman held that collateral proceedings which do not implicate the validity of a prisoner's underlying criminal

sentence constitute civil actions for which fees must be assessed under the PLRA. Webb asks that the filing fee be refunded, arguing (with the support of precedent from other circuits) that Newlin and Thurman were wrongly decided in this respect. We recently reached that very conclusion in Walker v. O'Brien, 216 F.3d 626, 633-37 (7th Cir. 2000), where we held that the PLRA does not apply to a petition for a writ of habeas corpus properly filed under either 28 U.S.C. sec. 2241 or sec. 2254. Webb is therefore entitled to the refund of his fee.

III.

Because the decision of prison officials to revoke 90 days of good time credit has the support of some evidence, we AFFIRM the judgment of the district court denying Webb's petition for a writ of habeas corpus. As this case does not constitute a "civil action" for purposes of 28 U.S.C. sec. 1915(b), Webb was not required to pay a fee in order to file the appeal. The Clerk of the United States District Court shall therefore refund the docketing fee that Webb paid in order to proceed with his appeal. We thank Dean Howard B. Eisenberg, whom we appointed to brief and argue this case on Webb's behalf, for his excellent service in this appeal, and we commend both parties for their helpful briefs.

/* We initially decided this case in Webb's favor without argument pursuant to Federal Rule of Appellate Procedure 34(a) and Circuit Rule 34(f) and remanded the case to the district court for an evidentiary hearing. See Webb v. Anderson, No. 97-3264, 172 F.3d 54, 1998 WL 870354 (7th Cir. Dec. 11) (unpublished) (text in Westlaw). We subsequently granted the State's petition for rehearing, vacated our previous order, appointed counsel for Webb, and set the case for argument.

/1 The district court suggested that the loss of credits for good time served "probably does not implicate a liberty interest under Sandin v. Conner, 515 U.S. 472 [115 S. Ct. 2293] (1995). R.9, Webb v. Parke, No. 97 C 337, Order at 1. Here there is no dispute, however, that Indiana law gives rise to a liberty interest in good time credits. See Wolff v. McDonnell, 418 U.S. 539, 557, 94 S. Ct. 2963, 2975 (1974); Meeks v. McBride, 81 F.3d 717, 719 (7th Cir. 1996). Moreover, we have repeatedly concluded that the loss of good time credits will support a claim for the deprivation of due process. See Thomas v. McCaughtry, 201 F.3d 995, 999 n.4 (7th Cir. 2000); Sweeney v. Parke, 113 F.3d 716, 718 (7th Cir. 1997); Meeks, 81 F.3d at 719.

/2 Webb suggests that one digit in the sample's eleven-character toxicology number may not match the number reflected on the toxicology report (Reply Br. at 3), but we disagree. What he (or his counsel) reads as a "6" we believe to be a "5," which conforms to the toxicology report. See R.6 Ex. A3.

/3 We note that in Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989), the Third Circuit held that a positive toxicology report alone sufficed as "some evidence" of a prisoner's drug use without any additional evidence as to the chain of custody. We need not, and do not, go that far here in sustaining the discipline imposed on Webb. Cf. Bourgeois v. Murphy, 809 P.2d 472, 482 (Idaho 1991) ("when there is no documentation of the chain of custody to show that that which was analyzed by the laboratory came from the inmate in question, there is no test from a legal standpoint"); Sherer v. State, 668 So.2d 174, 174 (Ala. Crim. App. 1995); Byerly v. Ashley, 825 S.W.2d 286, 288 (Ky. App. 1991), cert. denied, 506 U.S. 934, 113 S. Ct. 364 (1992); see also Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) ("there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions"), citing, inter alia, Mendoza v. Miller, 779 F.2d 1287, 1295 (7th Cir. 1985), cert. denied, 476 U.S. 1142, 106 S. Ct. 2251 (1986); accord, Viens, supra, 871 F.2d at 1335.