**Troy R. GIBBONS, Petitioner–Appellant,**

v.

**Rondle ANDERSON, Respondent–Appellee.**

No. 00–3603.

United States Court of Appeals, Seventh Circuit.

Submitted March 30, 2001.*

Decided March 30, 2001.

---

* After an examination of the briefs and the

record, we have concluded that oral argu-

Before Hon. KANNE, Hon. ILANA DIAMOND ROVNER, and Hon. WILLIAMS, Circuit Judges.

ORDER

Indiana inmate Troy Gibbons appeals the denial of his petition for a writ of habeas corpus challenging his loss of 90 days' good-time credit after testing positive for benzodiazepines during a random drug screening in January 1999. Gibbons principally argues that there was insufficient evidence to convict him of the drug use because the chain of custody on his urine sample was inadequate. We affirm.

On January 29, 1999, prison counselor Larry Ludwig filed a conduct report against Gibbons, stating that Gibbons had tested positive for benzodiazepines after a random urinalysis was performed.[1] In his report, Ludwig stated that the urine sample had been sealed in front of Gibbons and initialed both by Gibbons and the officer administering the urine test. He also noted that AIT Laboratories, the testing laboratory, found the seal of the urine sample unbroken on receipt; a copy of the lab report, which was attached to the conduct report, states that the specimen was received by the lab with valid chain of custody intact. The lab report also indicates that Gibbons's urine sample tested positive for three benzodiazepine drugs: Oxazepam, Desmethyldiazepam, and Temazepam. Ludwig reported that after receiving the results of the test he called the medical records department and the toxicologist to verify that Gibbons was not on

ment is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a).

1. According to the *Physicians' Desk Reference* (56th ed.2000), benzodiazepines belong to a group of drugs called central nervous system (CNS) depressants and are used to combat anxiety and some forms of depression. Common brand-name benzodiazepines include Valium and Xanax.

medication that would yield a false-positive result for benzodiazepines.

Gibbons was charged with use of an unauthorized drug in violation of the Adult Disciplinary Policies and Procedures. At his screening on January 29, Gibbons pleaded not guilty and requested "all medical records to do with a lung infection 12–98—1–99" as well as the testimony of various prison and laboratory personnel. At the disciplinary hearing before the CAB, Gibbons testified that he was given one shot of an unspecified medicine on January 3 at a hospital and another at an outside clinic on January 5; he argued that these injections were the reason he tested positive for drugs two weeks later. The CAB also received statements from two corrections officers and a nurse practitioner. In their statements, the officers confirmed that Gibbons had been sent to the hospital and to the clinic on the dates Gibbons specified, and that he had received a shot of "pain medication" on the January 5 visit. The nurse recounted in her statement that the last time Gibbons had been treated at the prison's Medical Services was on December 29, 1998, when he was given Toradol and Alupent inhalation treatment. The nurse reported that she had asked the doctors whether either drug would test positive for benzodiazepines, and the doctors ruled out any such effect. The CAB found Gibbons guilty based on his positive testing for benzodiazepines. The CAB sentenced Gibbons to six months' non-contact visits and a loss of 90 days' earned good-time credit.

On his appeal to the prison superintendent, Gibbons argued for the first time that there was a breach in the chain of custody when his urine was tested because (1) the seal was never removed from the AIT Laboratory form and placed on the specimen sent to the lab; and (2) the AIT Toxicologist failed to sign the chain-of-custody form. Gibbons also claimed that the medical records he requested had not been produced and that two witness statements he requested had not been taken. The superintendent denied the appeal. He rejected Gibbons's chain-of-custody argument because Gibbons had acknowledged by initialing the form that he was present during the sealing of the sample. The superintendent also explained that Gibbons was mistaken about the seal still being affixed to the chain-of-custody form, apparently because the carbonless copy of the original chain-of-custody form that Gibbons reviewed in preparing his motion gave the appearance that the sticker was still intact when, in fact, it had been removed from the original form.

On appeal to C.A. Penfold, the Indiana Department of Corrections's final reviewing authority, Gibbons maintained that the chain of custody was breached because the toxicologist failed to sign the form certifying that the specimen arrived sealed. Penfold found no evidence of procedural or due process error and denied the appeal. He did, however, modify the charge from use of an unauthorized drug to simple possession.

Having exhausted his administrative remedies, Gibbons petitioned for a writ of habeas corpus under § 2254, renewing his chain-of-custody arguments. The district court denied relief, concluding that *Webb v. Anderson*, 224 F.3d 649 (7th Cir.2000), controlled and that the disciplinary board's actions "passed constitutional muster." On appeal, Gibbons argues that there was insufficient evidence to convict him of the drug use because the chain of custody on his urine sample was inadequate.

We review the district court's findings of fact for clear error and its legal conclusions de novo. *See Warren v. Richland County Circuit Court*, 223 F.3d 454, 457 (7th Cir.2000). Indiana prisoners have

a protected liberty interest in good time credits, *see Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir.1996), and thus they are entitled to the minimum requirements of due process when faced with the loss of good-time credits due to alleged misconduct. *See Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In this context, due process requires among other things that "some evidence" in the record support the findings of the prison disciplinary board to ensure that prisoners are not arbitrarily sanctioned. *Superintendent, Mass. Correctional Inst. at Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). This is a lenient standard requiring "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir.1999). We do not weigh the evidence or independently assess witness credibility; we determine only whether the prison disciplinary board's decision to revoke good-time credits has some factual basis. *See Hill*, 472 U.S. at 455–56, 105 S.Ct. 2768; *McPherson*, 188 F.3d at 786. In addition, the evidence relied on by the board must have sufficient indicia of reliability to permit us to conclude that the sanction was not arbitrary. *See Meeks*, 81 F.3d at 720.

▪ The toxicology report and the chain-of-custody form constitute "some evidence" supporting the decision to impose sanctions on Gibbons. *See Webb*, 224 F.3d at 652. The chain-of-custody form and Gibbons's signature on the form confirm that the sample was collected from Gibbons and sealed in his presence. The toxicology report identified Gibbons by name, inmate number and sample number. Although the toxicologist did not sign the chain-of-custody form itself, the toxicology report certified that the "specimen was received by the lab with valid chain of custody intact." These documents establish that Gibbons's urine sample was properly collected, sealed, and delivered to AIT, and that laboratory analysis revealed the presence of unauthorized drugs in Gibbons's urine. That the toxicologist failed to sign the chain-of-custody form does not invalidate the form because the toxicology report itself certified that the sample arrived intact. *See, e.g., Thomas v. McBride*, 3 F.Supp.2d 989, 995 (N.D.Ind. 1998). "Absent some affirmative indication that a mistake may have been made, ... we cannot say that the toxicology report and chain of custody form fail to qualify as 'some evidence' from which prison officials could conclude that [Gibbons] had used [unauthorized drugs]." *Webb*, 224 F.3d at 653 (citing *United States v. Brown*, 136 F.3d 1176, 1182 (7th Cir.1998) (hypothetical possibility of tampering does not render evidence inadmissible)). Gibbons offers no evidence of affirmative mistake, only speculation about how his urine sample could have been tampered with. *Cf. Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir.1996) (where inmate's prisoner number was initially listed incorrectly on toxicology report and another inmate at the prison had the same name, the report lacked sufficient indicia of reliability to support the CAB's decision). Because the CAB decision was supported by "some evidence," we AFFIRM the judgment of the district court denying Gibbons's petition for a writ of habeas corpus.