**Rocky M. SHROYER, Petitioner–Appellant,**

v.

**Zettie COTTON,\* Respondent–Appellee.**

**No. 02–1767.**

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 9, 2003.\*\*

Decided Oct. 9, 2003.

---

\* Zettie Cotton, the warden of the Pendleton Correctional Center where Mr. Shroyer is presently confined, has been substituted for Al C. Parke as respondent pursuant to Fed. R.App. P. 43(c)(2).

\*\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before RIPPLE, MANION, and WILLIAMS, Circuit Judges.

### ORDER

A Conduct Adjustment Board ("CAB") found Indiana inmate Rocky Shroyer guilty of trafficking in contraband and sanctioned him with the loss of 180 days' earned credit time and a demotion in credit earning class. After exhausting his administrative remedies, Mr. Shroyer sought relief under 28 U.S.C. § 2254. The district court denied his petition, and we affirm.

In August 2000, Mr. Shroyer's mother visited him at the Putnamville Correctional Facility. After the visit, Correctional Officer Browning searched Mr. Shroyer and discovered two small plastic parcels containing tobacco and rolling papers hidden in his left boot. An internal affairs investigator was notified of the discovery and, after reviewing a security videotape of the visiting room where Mr. Shroyer met his mother, placed him in segregation pending an investigation. The investigator later issued a conduct report charging Mr. Shroyer with trafficking in contraband, explaining in the report that the videotape had plainly captured "an exchange be-

tween Offender Shroyer and his mother" (R. 13, Ex. 1). Mr. Shroyer pleaded not guilty and requested a lay advocate. He also requested that his mother serve as a witness, but was refused on the ground that his mother was on "lockout" status due to her role in smuggling the tobacco to her son.

At the CAB hearing Mr. Shroyer asserted that he was wearing shoes, not boots, and requested that the CAB view the security videotape of the incident. After denying this request, the CAB found him guilty based on the conduct report and his own statements. Mr. Shroyer appealed on the ground that he was denied the opportunity to call witnesses and to examine any documentary and physical evidence, as well as that he was not provided with a meaningful explanation of the CAB's findings.

Although the prison superintendent initially rejected a request for rehearing, he later granted the request and provided Mr. Shroyer with a list of witnesses to choose from, including guards and prisoners who were present in the visitors' room when Mr. Shroyer met with his mother. Mr. Shroyer chose Correctional Officers J. Miller, V. Miller, and Knauer; inmate Bruce; and his mother, noting that she would testify that he had not engaged in trafficking. But none of the witnesses appeared. Officers J. Miller and V. Miller provided written statements denying any recollection of the incident, while Officer Knauer and inmate Bruce gave written statements explaining that they had not seen anything unusual. The CAB again denied Mr. Shroyer's request for his mother to appear but stipulated that she would testify that she did not bring anything into the facility or traffic with her son.

At the rehearing Mr. Shroyer denied that any tobacco was found on him when searched and asked to see the videotape of the incident. His request was denied, and

the CAB again found him guilty and imposed the same punishment. The CAB stated that it found "all reports true and factual," basing its decision on investigation and staff reports, Mr. Shroyer's statement, the tobacco, and the videotape of the incident. He again appealed the decision and was denied.

In his § 2254 petition, Mr. Shroyer asserts that he was deprived of due process because: (1) he was denied the right to examine physical and documentary evidence; (2) he was denied the right to be heard and to call witnesses; (3) rehearing was not the proper remedy for the alleged deficiencies of the original hearing; (4) the CAB that heard his case was not impartial; and (5) "some evidence" did not support his disciplinary conviction. The district court held that Mr. Shroyer received all the procedural and substantive process to which he was entitled and denied his petition.

Mr. Shroyer has a protected liberty interest in his good time credits and credit-earning class and may not be deprived of either without the minimum requirements of due process. *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir.2002) (per curiam); *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir.2001). In this context, due process consists of advance written notice of the charges, *see Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), a limited right to call witnesses and produce documentary evidence, *id.* at 566–67, a right to be heard before an impartial decision maker, *id.* at 570–71, and a written statement as to the evidence relied on and reasons for the disciplinary action, *id.* at 563–64, that is supported by "some evidence" in the record, *see Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000).

■ At the heart of Mr. Shroyer's petition is his contention that he was denied the right to examine the videotape of the incident. However, he did not have an unlimited right to examine evidence, especially if doing so would compromise institutional safety or goals. *See Wolff,* 418 U.S. at 566; *Pannell v. McBride,* 306 F.3d 499, 503 (7th Cir.2002). Mr. Shroyer does not contend that examining the videotape would reveal that he did not traffick; rather his complaints are, alternatively, that the refusal to let him see the tape casts doubt on its existence, that the tape was improperly handled in the chain of custody, and that the CAB never actually viewed the video. Contrary to his assertions, the hearing report documents that the CAB viewed, considered, and relied upon the security tape in adjudicating his guilt. Chain of custody is not a significant factor here, *compare Webb,* 224 F.3d at 652–53, and since Mr. Shroyer does not even allege that the tape was exculpatory, we can find no error in denying him access to it, *see Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (right to *exculpatory* evidence is qualified).

We note that this result is not inconsistent with our recent decision in *Piggie v. Cotton,* 344 F.3d 674 (7th Cir.2003). In *Piggie* a CAB denied an inmate access to a videotape which recorded his cell extraction by several officers. *Id.* at 678. The CAB report was silent as to the tape's contents; however, a post-hearing report suggested that the tape might not inculpate the offender. *Id.* at 679. Because there was no apparent security concern and because there was a suggestion that the tape could have been exculpatory, we held that it was error for the district court not to make an *in camera* review of the tape in order to evaluate whether it was exculpatory or legitimately withheld for security or other reasons. *Id.*

However, in this case the internal affairs investigator reported that the videotape shows an exchange between Mr. Shroyer and his mother. Furthermore, the offender in *Piggie* knew what was being taped during the extraction–he was–so therefore no security concerns were at stake. *Id.* at 679. By contrast, the State asserts that allowing Mr. Shroyer to view the videotape of the visiting room would compromise institutional security. Therefore, it was not error to deny Mr. Shroyer access to the videotape.

■ Nor was Mr. Shroyer deprived of any right to examine the visiting room log book. Mr. Shroyer essentially argues that he was not allowed to conduct discovery to find out who was in the visiting room so that he could call them as witnesses. We doubt that inmates have any right to discovery beyond the conditional right to disclosure of exculpatory evidence, *see Rasheed–Bey,* 969 F.2d at 361; even criminal defendants lack such constitutional protection, *United States v. Cruz–Velasco,* 224 F.3d 654, 665 (7th Cir.2000) ("It is well established ... that there is no constitutional right to discovery in non-capital criminal cases...."). It would be unreasonable to assume that prisoners before disciplinary boards are afforded greater constitutional rights than the presumed innocent in criminal proceedings. *See Wolff,* 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). Accordingly, it was not error to deny Mr. Shroyer access to the log book.

■ Mr. Shroyer argues in a similar fashion that he was denied the right to view the tobacco and a statement by Officer Browning. However, Mr. Shroyer does not explain, nor can we perceive, how he was prejudiced by the CAB's refusal to allow him access to these items, especially

as he was provided a copy of a conduct report which summarized Officer Browning's findings. *See Rasheed–Bey*, 969 F.2d at 361. If Mr. Shroyer really means to complain that he was not allowed to examine Officer Browning in person about those findings, we note that he does not have the right of confrontation or cross-examination. *See id.*

◼ Next, Mr. Shroyer argues that he was unfairly restricted in his choice of witnesses to the superintendent's list of six individuals and that the CAB refused to permit his mother to appear and testify. Mr. Shroyer did not have an unconditional right to call witnesses; rather, the right may be limited if the proposed testimony would be irrelevant, repetitive, or unnecessary. *Wolff*, 418 U.S. at 566; *Pannell*, 306 F.3d at 503. Because Mr. Shroyer does not describe potential testimony that would not be irrelevant, repetitive or unnecessary, and because the CAB stipulated to what Mr. Shroyer expected his mother to say, we perceive no deprivation of Mr. Shroyer's rights. *See Wolff*, 418 U.S. at 566; *Pannell*, 306 F.3d at 503.

◼ Mr. Shroyer also complains that he was denied the right to be heard, but what he means by this is that the CAB repeatedly interrupted his lay advocate's attempts to address alleged errors in the proceedings by telling him to "appeal it." Mr. Shroyer's real concern appears to be that the CAB did not agree with what he or his advocate had to say rather than that it declined to hear exculpatory, important or even pertinent evidence. Accordingly, we cannot conclude that the CAB violated his conditional right to present testimony. *See Wolff*, 418 U.S. at 566; *Pannell*, 306 F.3d at 503.

◼ Mr. Shroyer next argues that the proper relief for the alleged procedural errors at his first hearing was expunge-ment of his disciplinary conviction. We disagree. This court has explicitly stated that even "an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge." *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir.1996); *cf. Garrity v. Fiedler*, 41 F.3d 1150, 1152–53 (7th Cir.1994) (prison disciplinary sanction does not implicate double jeopardy). That statement echos stronger in this case, where Mr. Shroyer was not acquitted on appeal but merely permitted a rehearing in order to present witness testimony. Mr. Shroyer also argues that his rehearing did not take place in a timely manner; however, at most this is a violation of prison policy or state law that, even if supported, cannot be the basis for relief under § 2254. *See Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir.2002).

◼ Mr. Shroyer also contends that the CAB that reheard his case was not impartial. He maintains that the CAB had prejudged his guilt because it had a completed and signed hearing report in front of it prior to the hearing, and that the CAB was motivated to find him guilty because he had recently stolen $13,000 from the prison trust fund account via fraudulent checks. Although Mr. Shroyer is entitled to a fair and impartial hearing, *see Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir.1995) (per curiam), his unsupported allegations of vindictiveness on the part of the CAB do not overcome the presumption of honesty and integrity that CAB members are entitled to. *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Piggie v. Cotton*, 342 F.3d 660, 666–67 (7th Cir.2003) (per curiam). Accordingly, we find no improper bias.

◼ Finally, Mr. Shroyer argues that the CAB's finding of guilt is unsupported by "some evidence" in the record. The "some evidence" standard requires no

more than "a modicum of evidence," and the decision of the prison disciplinary board will be upheld if there is *any* evidence to support the finding of guilt. *Webb,* 224 F.3d at 652 (citing *Hill,* 472 U.S. at 455). Here, we cannot say that the security tape and conduct report composed by the investigating officer fail to qualify as "some evidence" from which Mr. Shroyer's guilt can be inferred.

As a last matter, we decline Indiana's invitation to revisit our earlier holding in *Walker v. O'Brien,* 216 F.3d 626 (7th Cir. 2000).

AFFIRMED.