**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 29, 2007[*]
Decided November 29, 2007

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1618

| | |
|---|---|
| MARSHALL JACKSON,<br>    *Petitioner-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Evansville Division |
| *v.* | |
| | No. 3:06-cv-147-RLY-WGH |
| JEFF WRIGLEY, *Superintendent,*<br>    *Respondent-Appellee.* | Richard L. Young,<br>*Judge.* |

## O R D E R

Indiana prisoner Marshall Jackson lost 30 days of good-time credit after a disciplinary board found that he had conspired with a friend to bring contraband—specifically, four pounds of tobacco—into the Branchville Correctional Facility. Jackson petitioned for a writ of habeas corpus, *see* 28 U.S.C. § 2254, claiming that the hearing did not meet the minimum standards of procedural due process. The district court dismissed the petition, and we affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

A disciplinary board held a hearing to consider the trafficking charges against Jackson.  At the hearing Internal Affairs Investigator Lester Purviance submitted an investigation report stating that on June 7, 2006, a local park employee stopped a woman in the park's restricted area—the same area where Branchville inmates work.  Park employees searched the restroom nearby and found four pounds of tobacco sealed in a trash bag behind a toilet.  The report stated that Purviance checked the visitor log at Branchville and discovered that the woman from the park had visited Jackson on June 8, 2006.  This was an error; the visitor log actually showed that she visited Jackson on June 7.  Accordingly, the board postponed the investigation to clarify the dates.  It reconvened three days later, and Purviance submitted a new investigation report that was identical to the first except that the date of the visit was changed to June 7—the same day Jackson's friend was seen in the park.  The conduct adjustment board found Jackson guilty of conspiring to commit trafficking.

After appealing unsuccessfully to the Branchville facility head and Indiana's Final Reviewing Authority, Jackson filed the § 2254 petition underlying this appeal.  He claimed that he was deprived of adequate notice of the charges and the opportunity to prepare an adequate defense; that the disciplinary board was biased, credited unreliable evidence, and did not adequately explain its decision; and that there was no evidence of his guilt.  The district court concluded that Jackson's due process claims were all either procedurally defaulted or meritless.

On appeal Jackson reasserts all of his due process claims, but three of them are procedurally defaulted.  To avoid procedural default, an Indiana prisoner challenging a disciplinary proceeding must fully and fairly present his federal claims to the facility head and to the Final Reviewing Authority.  *See Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006); *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002).  Here, Jackson failed to present to the warden his claims that the board (1) credited the statement of an unreliable confidential informant, (2) did not adequately explain its decision, and (3) impermissibly relied on a photograph of Jackson and his friend that he characterizes as "suggestive."  Nor did Jackson present the latter claim to the Final Reviewing Authority.  Although he now argues that he presented the "operative facts" underlying these claims at both levels, his argument is belied by the record.  Accordingly, these three claims are procedurally defaulted.  *See Anderson*, 471 F.3d at 815.

Turning to the merits of the remaining claims, Jackson first argues that the board deprived him of evidence that he needed to prepare his defense.  Specifically, he argues that he asked for, but never received, a copy of his own statement to Purviance and a "map and globe" of Indiana.  He further contends that he was denied the right to call two witnesses.  Although Jackson had a right to call witnesses and present documentary evidence at the disciplinary hearing, *see Wolff*

*v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Scruggs v. Jordan*, 485 F.3d 934, 939-40 (7th Cir. 2007), nothing in the record supports his assertion that he was denied that right. In fact, the notice of disciplinary hearing shows that he checked a box stating that he wished to call witnesses, but he did not list any names in the space provided. The only specific evidence Jackson requested was a list of visitors he had on three days in June 2006—and he does not deny that the visitor log he received fulfilled that request.

Next Jackson argues that Investigator Purviance communicated with the disciplinary board *ex parte* and effectively acted as its "fourth member." Although Jackson was entitled to an impartial disciplinary board, *see Wolff*, 418 U.S. at 570-71, the board's decision to confer with Purviance outside of Jackson's presence did not deny him that right, *see White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). Because prison disciplinary boards are entitled to discuss with an investigator information that is withheld from a prisoner, such off-the-record discussions do not, standing alone, give rise to bias. *See id.* at 767. And the only explanation that Jackson gives for his assertion that Purviance was the board's constructive fourth member is that it postponed the hearing at his request to allow him to correct the dates on his report. But Jackson has not explained why this delay was anything other than routine, let alone unusual enough to demonstrate bias of a magnitude to deny him due process. *Cf. Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) (noting that even an officer who is tangentially involved in an investigation can sit on a disciplinary board).

Jackson also argues that there was no evidence to support the finding that he conspired with his friend to traffic tobacco into the Branchville facility. In the context of prison disciplinary findings, the requirements of due process are satisfied as long as some evidence supports the board's decision. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). That standard requires only enough evidence to demonstrate that the disciplinary decision was not arbitrary. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Here, the disciplinary board relied on an investigation report stating that on the same day Jackson's friend visited him, she and four pounds of tobacco were found in an unauthorized area of a local park where Branchville inmates work. This constitutes some evidence that Jackson and his friend agreed that she would hide tobacco for an inmate to retrieve and smuggle into the prison. It does not matter whether Jackson worked in the park—he adamantly asserts that he did not—because he could have agreed with his friend to have another inmate retrieve the tobacco. Under the "lenient" standard of some evidence, *see id.* at 652, the facts in the investigation report sufficiently support the board's finding of guilt.

Jackson next argues that the board deprived him of due process because it did not give him the updated copy of Purviance's investigation report until the

second hearing began. Due process requires that prisoners receive written notice of the claimed violation at least 24 hours before a hearing. *Wolff*, 418 U.S. at 564; *Scruggs*, 485 F.3d at 939. This requirement is satisfied as long as the notice provides enough of the underlying facts to allow the prisoner to prepare a defense. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361-62 (7th Cir. 1992). Jackson received notice of the charges against him six days before his first hearing. In that notice, Purviance erroneously wrote that Jackson's friend visited him on June 8. But Jackson, having been present at the visit, must have known that his friend came on June 7. He also had a copy of a visitor log showing the correct date of the visit. When the disciplinary board postponed the hearing for two days, it gave him written notice that the reason for the delay was "to clarify some dates on the investigation." This information, taken together, was sufficient to put Jackson on notice of, and allow him to defend against, the charge that his friend visited him on the same day she was seen in the park. That is all that due process requires. *See id.* at 362; *see also Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (noting that a potentially misleading error in an investigation report may be excused if other details put the prisoner on notice of the conduct at issue).

Finally, Jackson argues that the district court improperly applied a "presumption of correctness" to its review of the disciplinary proceedings. This argument is frivolous. The court never said it was applying any presumption, and Jackson states that the only reason he thinks it did is because he disagrees with the court's outcome.

AFFIRMED.