NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 10, 2020[*]
Decided April 13, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 19-2761

| | |
|---|---|
| KEVIN L. MARTIN, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
| *v.* | No. 2:18-cv-00429-JMS-DLP |
| JOHN GALIPEAU, | Jane Magnus-Stinson, |
| *Respondent-Appellee*. | *Chief Judge*. |

**O R D E R**

Kevin Martin, an Indiana prisoner, was charged with making a threat. A disciplinary hearing officer found him guilty and revoked 60 days of good-time credit. After exhausting his administrative remedies, Martin filed a petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, arguing that the disciplinary proceedings did not comport with due process because his conviction was not supported by sufficient evidence and

---

[*] We have agreed to decide this case without oral argument because the briefs and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

he was wrongly denied evidence. The district court denied Martin's petition. Because some evidence supports Martin's disciplinary conviction, and the evidence he requested could not have helped his defense, we affirm.

Correctional officer M. Foster (whose full name is not in the record) issued a conduct report to Martin, alleging that she heard him make a threat, in violation of the prison's disciplinary rules. Foster reported that at approximately 1:20 p.m., roughly ten minutes after she had spoken to Martin about property he had requested, he began kicking his cell door and yelling for a sergeant. Foster wrote that she "stepped out onto the Range" and heard Martin yell, "Wait until I get my hands on one of you punk ass bitches." According to Foster, she then asked Martin if he knew that what he had said was a threat, and Martin responded that he was "damn sure" it was. Foster attached to the conduct report a handwritten statement from a caseworker, Jerricha Meeks, who wrote that from her office, she had heard Martin yell: "Wait until I get my hands on you punk ass bitches." Later Meeks also typed up a "case note" (the context in which it was prepared is unclear) that essentially restates Foster's account of the incident.

When informed of the charge, Martin pleaded not guilty and requested evidence to defend his case. He asked for four witnesses: two other prisoners, to corroborate his story, one officer to explain "why he did not give me my property," and a sergeant to explain "what this whole situation was about"—that is, why he had been yelling. Martin also requested that the disciplinary hearing officer review the video recording of the range—the common area into which the cell doors open—from 1:05 p.m. to 1:30 p.m. on the date of the incident.

The hearing officer reviewed the portion of the video from 1:16 p.m. to 1:29 p.m. It is unknown why the hearing officer did not begin reviewing the video at 1:05 p.m., as Martin requested. The video, which did not include sound, did not depict Foster interacting with Martin. It also did not show that Foster "stepped out onto the range" other than to pass through six times, escorting inmates with another correctional officer.

The two prisoners who provided witness statements asserted that Martin had been "talking to the range," "not referring" to Foster, and "yelling for the control room to get assistance for his situation." Martin was not allowed to call as witnesses the two officials he identified, neither of whom had been present when he was yelling, but they gave short witness statements in the pre-hearing investigation. The sergeant stated that he spoke with Martin after the incident and was told "it was all over him not getting his [allowed] property on time," and the officer stated that Martin had received his property on the day of the incident.

At the disciplinary hearing, Martin argued that Foster's conduct report and Meeks's statement were false. This evidence, he argued, had been fabricated as retaliation for his prior grievances filed against Meeks. The hearing officer considered Martin's testimony, Foster's report, Meeks's statement, the other prisoners' statements, and the video. Crediting Foster's and Meeks's statements over Martin's denial, the hearing officer found Martin guilty. Among other sanctions, Martin lost 60 days of good-time credit.

After losing his internal appeals, Martin filed this petition under § 2254. He argued that he had been deprived of due process in three ways: First, the evidence supporting his disciplinary conviction was insufficient because the video showed that no officer entered the range at the time of the alleged threat and Foster's and Meeks's statements had been fabricated as retaliation for prior grievances filed against Meeks. Second, he had been wrongly denied evidence—in particular, the earlier segment of the video recording. Third, Martin's witnesses gave written statements but were not permitted to testify. (Martin does not renew this argument on appeal, so we say no more about it.)

The district court denied Martin's petition. The court deemed Foster's conduct "problematic" because the video does not match her account that she stepped onto the range and spoke to Martin in response to his yelling; Meeks's separate case note, which repeats Foster's story, was flawed for the same reason. But Meeks's handwritten statement (attached to Foster's conduct report) states that, from her office, she heard Martin yell a threat. The district court concluded that this statement was enough to support Martin's conviction for making a threat. Further, Martin did not explain how he was prejudiced by the hearing officer viewing less of the video than he requested. The court reasoned that, at best, the video recording would have shown more of the same (that Foster did not interact with Martin). And if it supported Foster's account, Martin was worse off.

On appeal, Martin first argues that neither Foster nor Meeks can be credited because the video contradicts their reports that Foster stepped onto the range to speak with Martin and because Meeks provided evidence against him in retaliation for a grievance he had previously filed against her. Second, Martin insists that the hearing officer's failure to review the first 12 minutes of the video recording prejudiced his defense because it would have confirmed that he never interacted with Foster.

We review the denial of Martin's § 2254 petition de novo. *Scruggs v. Jordan*, 485 F.3d 934, 938 (7th Cir. 2007). In Indiana, a prisoner has a liberty interest in his

earned good-time credits, so the state must follow the appropriate procedures before revoking these credits. *Montgomery v. Anderson*, 262 F.3d 641, 644–45 (7th Cir. 2001). In the prison-disciplinary context, due process requires, among other things, that a conviction be supported by "some evidence." *Superintendent Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). This standard requires no more than a "modicum of evidence." *Webb*, 224 F.3d at 652 (quoting *Hill*, 472 U.S. at 455). We ask "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* (quoting *Hill*, 472 U.S. at 455–56). The evidence must be sufficiently reliable, *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996), but it need not "logically preclude[]" conclusions other than the one the hearing officer reached. *Hill*, 472 U.S. at 457.

Under this standard, sufficient evidence supported the finding that Martin yelled a threat, even though the video does not support Foster's entire account. Foster reported that she heard Meeks yell, "Wait until I get my hands on one of you punk ass bitches," and Meeks's same-day handwritten statement corroborates that report: She said she heard the same remark from her office, off of the range. The two other prisoners corroborated that Martin was yelling and upset; they simply denied that Martin directed his remarks at Foster. But that is not relevant to the violation he was charged with: communicating a threat against *anyone*. Martin himself did not deny yelling (though he stated that he was calling for a specific officer to deliver his property and that Foster was not there). Thus, even ignoring the contradicted portions of Foster's and Meeks's accounts, there is at least "some evidence" of Martin's guilt.

Martin argues, however, that the video discredits Meeks and Foster entirely, and so the hearing officer could not rely on any evidence originating with them. But it was up to the hearing officer to weigh the witnesses' credibility—we do not reweigh the evidence presented at the hearing. *Webb*, 224 F.3d at 652. Meeks's uncontradicted statement about what she heard was sufficiently reliable for the hearing officer to deem credible. *Meeks*, 81 F.3d at 720.

Further, Martin's assertion that Meeks provided evidence out of a retaliatory motive is irrelevant to whether he received due process. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987). The due process protections set forth in *Wolff*—advance written notice of violation, a written explanation of the decision, the right to present witnesses and evidence, and a decision by an impartial body—shield prisoners from arbitrary actions. *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). Once those procedures are followed, our only function is to

determine if the disciplinary hearing officer's decision was based on "some facts." *Id.* (citation omitted). Here, as explained above, the decision had some factual basis. A § 2254 petition to recover lost good-time credit is not the way to bring a claim that a prison official retaliated against an inmate for the protected activity of filing a grievance. *See Gomez v. Randle*, 680 F.3d 859, 866–67 (7th Cir. 2012) (prisoner's retaliation claim actionable under 42 U.S.C. § 1983).

Finally, Martin argues that he was prejudiced by the disciplinary hearing officer's failure to review the additional 12 minutes of video Martin requested. But he does not explain how this evidence could have undermined or contradicted the evidence supporting the finding that he yelled a threat. *See Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011). As the district court reasoned, the first 12 minutes of the video could have shown nothing more helpful to him than the latter half: that Foster did not directly interact with Martin. And if it did show that Foster approached him, he would have been worse off. Either way, without sound, the additional portion of the video could not prove that Martin was not yelling or did not make the alleged threat. Therefore, Martin was not prejudiced by its absence.

AFFIRMED