909 A.2d 755

RAMON ROBLES, PETITIONER–APPELLANT, v. NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 12, 2006—Decided November 6, 2006.

---

[1] Plaintiff's reliance on *Berger v. First Trenton Indem. Co.,* 339 *N.J.Super.* 402, 772 *A.*2d 28 (App.Div.2001) is misplaced. In *Berger,* we held that a passenger injured in a taxi was entitled to UM coverage under her own automobile insurance policy despite that policy's attempt to exclude coverage when the insured was a passenger in a vehicle operated for a fee, such as a taxi. We so held because the exclusion conflicted with the coverage mandated by *N.J.S.A.* 17:28–1.1. That is not the case here.

Before Judges LEFELT, SAPP–PETERSON and SABATINO.

Appellant, *Ramon Robles,* submitted a pro se brief.

*Stuart Rabner,* Attorney General, attorney for respondent (*Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Christopher C. Josephson,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LEFELT, P.J.A.D.

A fight broke out at the Garden State Youth Correctional Facility involving approximately thirty-four inmates, many of whom were either members of the prison's Muslim population or members of or suspected members of the Bloods, a group that has been found to present a security threat to the prison. *N.J.A.C.* 10A:1–2.2 (defining security threat group); *N.J.A.C.* 10A:5–6.1 to 6.34 (regulating the identification and management of security threat group members). Based exclusively on a videotaped recording of the incident, a Senior Corrections Officer, who was also petitioner's housing officer, identified petitioner Ramon Robles as an active participant in the melee. Consequently, the facility charged petitioner with "conduct [that] disrupts or interferes with the security or orderly running of the correctional facility," *N.J.A.C.* 10A:4–4.1(a)*.306, and participation "in an activity, related to a security threat group," *N.J.A.C.* 10A:4–4.1(a)*.010.

At petitioner's disciplinary hearing, the hearing officer reviewed the videotape, the report of the Senior Corrections Officer, special reports from correctional staff who observed the fight, and reports from a Senior Investigator regarding the possible gang-related motive for the fight. The hearing officer made available to petitioner all of the incriminating evidence, with the exception of the videotape. Petitioner was found guilty of both charges, and the hearing officer imposed sanctions including fifteen days detention with credit for time served, 365 days administrative segregation, 365 days loss of commutation time, and 180 days loss of recreation privileges.

Petitioner then appealed to the Assistant Superintendent, who ultimately upheld the hearing officer's decision. In his appeal to this court, petitioner argues that the hearing officer's refusal to allow him to examine the videotaped recording of this incident violated his due process rights.

On this appeal, the Department of Corrections, as did the hearing officer below, contends that the videotape is confidential because disclosure would allow inmates to discover the "camera

angles, locations or blind spots" in this aspect of the prison's security system. The videotape evidence is particularly crucial here, as there was no corroborating testimony by anyone who had personally observed petitioner doing anything wrong.

■ Although prison inmates have a due process right to call witnesses and present evidence in defense of any charged violation, *U.S. Const.* amend. XIV, § 2; *N.J. Const.* art. I, ¶ 1, this right may be "abridged to the extent necessary to accommodate the institutional needs and objectives of prisons." *McDonald v. Pinchak,* 139 *N.J.* 188, 194, 652 *A.*2d 700 (1995) (citing *Wolff v. McDonnell,* 418 *U.S.* 539, 556, 94 *S.Ct.* 2963, 2975, 41 *L.Ed.*2d 935, 951, (1974)). When this right is abridged, in the context of a disciplinary hearing, the prison must set forth the "reasons for the denial ... on the Adjudication of Disciplinary Report form." *N.J.A.C.* 10A:4–9.13(e).

■ Generally, where the correctional facility demonstrates a "bona fide security justification," courts have had little trouble with the curtailment of a prisoner's right to present evidence. *See, e.g., Piggie v. Cotton,* 344 *F.*3d 674, 679 (7th Cir.2003); *Shroyer v. Cotton,* 80 *Fed.Appx.* 481, 484 (7th Cir.2003). However, in this case, the Department asserts a general claim of confidentiality "to preclude inmates from learning camera angles, locations or blind spots." While this may be a legitimate concern, *Gaither v. Anderson,* 236 *F.*3d 817, 820 (7th Cir.2001), we cannot approve "a blanket policy of keeping confidential security camera videotapes for safety reasons." *Piggie, supra,* 344 *F.*3d at 679.

For example, in *Kounelis v. Sherrer,* No. 04–4714, 2005 WL 2175442, at *10, 2005 *U.S. Dist. Lexis* 20070, at *32 (D.N.J. Sept. 6, 2005), the court rejected a security assertion and found a due process violation. The camera recording the incident at issue there was in an area "where inmates are routinely frisked and searched [and] inmates know that they are under heightened scrutiny regardless of the presence or specific location of any cameras in the frisk area." *Id.* at *10, 2005 *U.S. Dist. Lexis* 20070, at *33. Moreover, the prison, in *Kounelis,* as was the

situation here, did not submit any evidence in support of its contention that the utilization of surveillance videos would be compromised if inmates knew the location of the cameras. *Id.* *10, 2005 *U.S. Dist. Lexis* 20070, at *32–33.

Accordingly, to comply with administrative fairness, *Avant v. Clifford,* 67 *N.J.* 496, 560, 341 *A.*2d 629 (1975), we remand this matter to the Department for reconsideration of its finding that security concerns require this particular videotape to remain confidential. On remand, the hearing officer should make further findings specifically justifying any need for confidentiality of this videotape. The record below reflects little information about any security camera and its capacity, placement, or working mode, beyond revealing that two officers apparently began filming the fight after it started, the videotape(s) included an audio component, and the Senior Correction Officer's disciplinary report referred to the tape(s) as "Tower videotapes."

While we suspect that the videotapes were made from Towers in the Big Yard, where the fight took place, we do not know whether there were other cameras in the area, whether the camera(s) that recorded the videotape(s) in question are concealed or visible to the inmates, whether the camera(s) indicate in some way that they are filming, whether the camera(s) are stationary or can be aimed, and whether the camera(s) are constantly on or need to be activated in some way. If the Department believes that revealing some of this information would impair security, it should explain why. In short, the prison must develop a record regarding the need for confidentiality of the particular videotape it relies upon and may not simply assert generally that its disclosure would threaten security.

In this case, we note also that one of the officers indicated in a report that the "camera didn't record much due to a malfunction." Consequently, if after reviewing the circumstances surrounding the development of the videotape(s), the hearing officer reaffirms their confidentiality, in addition to supporting this judgment, the hearing officer shall minimally disclose exactly what wrongful behavior was observed on the videotape(s), apart from the in-

mate's mere presence in the yard, which is admitted. Furthermore, the hearing officer should indicate the videotape(s)' quality, and the circumstances that facilitated identification of the inmate, his face, clothing, speech, or any other identifying feature. Petitioner contends that the videotape(s) could have exonerated him, not inculpated him, a claim we are unable to evaluate since there is no detail in the record concerning what the videotape actually depicts.

In short, we reject the generalized confidentiality assertion and expect the Department on remand to present sufficient evidence to enable us to review the confidentiality claim, should petitioner re-appeal. *See Matter of Vey*, 124 *N.J.* 534, 544, 591 *A.*2d 1333 (1991) ("When the absence of particular findings hinders or detracts from effective appellate review, the court may remand the matter to the agency for a clearer statement of findings and later reconsideration.").

Remanded. We do not retain jurisdiction.