**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0688-18T1

CARLOS MANSANET,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 18, 2019 – Decided December 9, 2019

Before Judges Messano and Vernoia.

On appeal from the New Jersey Department of Corrections.

Carlos Mansanet, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher Josephson, Deputy Attorney General, on the brief).

PER CURIAM

At all times relevant to this appeal, Carlos Mansanet was incarcerated at Bayside State Prison. He appeals from a Department of Corrections' (DOC) final agency decision imposing administrative segregation, loss of commutation time, and loss of recreation privilege sanctions based on its finding he committed three prohibited acts during two incidents. We affirm in part, reverse in part, and remand for reconsideration of the sanctions imposed.

The record before the DOC shows that on June 11, 2018, at approximately 7:10 p.m., corrections officers conducted a non-routine search of a unit within the prison. The inmates in the unit moved to a courtyard while the search was conducted. While in the courtyard, inmate Mark Toussaint refused to comply with an order that he submit to a pat-down search and failed to comply with other orders made by the officers present.

As a result of Toussaint's resistance to the officers' orders, a "Code 33" was called, requiring that additional officers respond to provide assistance. During the struggle with Toussaint, the other inmates, including Mansanet, were ordered to lay on the ground. As he laid on the ground, Mansanet yelled to Sergeant James Conrey, "this is bullshit. You can't put us on the ground. You're lucky I'm not standing up." Sergeant Conrey characterized Mansanet's statements as "threats" and reported he "felt an assault was imminent." Sergeant

Conrey "deployed a burst of "OC spray" into Mansanet's forehead and ordered him to be handcuffed to which he complied."[1]

Additional officers arrived in the courtyard and escorted Mansanet and Toussaint to the infirmary. At 7:35 p.m., as Mansanet was escorted to the infirmary, he told one of the officers "multiple times" that when he "caught [the officer] on the street [the officer] was a dead man," and said he would "kill" the officer and "was going to fuck [the officer's] mother." Mansanet also "pulled himself away from" the escorting officers, and, in response, they forced Mansanet "to the ground where he sustained minor injuries." The officers called a Code 33, requiring that additional correctional staff respond to secure Mansanet and complete the escort to the infirmary.

The following day, DOC staff served Mansanet with disciplinary charges arising from incidents in the courtyard and during the transport to the infirmary. In connection with the courtyard incident, Mansanet was charged with committing prohibited acts *.005, threatening another with bodily injury, N.J.A.C. 10A:4-4.1(a)(2)(ii); and *.306, conduct that disrupts or interferes with the security or orderly running of the institution, N.J.A.C. 10A:4-

---

[1] OC spray is described as a "chemical agent" that is used to "subdue" individuals incarcerated in our State prison system. Mejia v. N.J. Dep't of Corr., 446 N.J. 369, 372 (App. Div. 2016).

4.1(a)(2)(xxix). As a result of the transport incident, Mansanet was charged with committing prohibited act *.005, threatening another with bodily injury, N.J.A.C. 10A:4-4.1(a)(2)(ii). Mansanet pleaded not guilty to the charges and was assigned a counsel substitute.

Prior to his hearing, Mansanet requested a video recording of the courtyard incident. The request was denied due to security issues – the recording disclosed blind spots within the prison that the facility's recording equipment did not cover.[2]

Defendant also requested statements from three inmate witnesses that were obtained and supplied to the hearing officer. Defendant was granted confrontation with the four correction officers who provided statements regarding the courtyard and transport incidents, and the witnesses responded to written questions submitted by Mansanet. Defendant denied the commission of the prohibited acts and relied on his witnesses' statements. The hearing officer considered the officers' and witnesses' statements, and reviewed a video recording of the courtyard incident.

---

[2] Mansanet's request for a polygraph examination was also denied. He does not challenge the denial on appeal.

A-0688-18T1

The hearing officer found Mansanet committed prohibited act *.005 during the courtyard incident by making "a threat" while "numerous inmates . . . [were] in a confined area." The hearing officer also found "[t]here was no evidence to dispute the charge."

In addition, the hearing officer concluded Mansanet committed prohibited act *.306 because Mansanet's threat was made with other inmates in the area, and that "[t]his could have escalated to a security safety issue." The hearing officer also found Sergeant Conrey "reported" that Mansanet's "actions resulted in delays." The hearing officer imposed 180 days administrative segregation, 180 days loss of commutation time, and 30 days loss of recreation privileges as a "[c]ombine[d]" sanction for Mansanet's commission of prohibited acts *.005 and *.306.

The hearing officer further determined Mansanet committed prohibited act *.005 during the transport incident by pulling away from the escorting officers and by threatening to kill one of the officers if Mansanet saw him "on the street." The hearing officer imposed 120 days of administrative segregation, 120 days loss of commutation time, and 15 days loss of recreation privileges as the sanction. The hearing officer imposed those sanctions consecutive to the sanctions imposed for the courtyard incident. As a result, the aggregate

5

sanctions imposed for Mansanet's violations totaled 300 days administrative segregation, 300 days loss of commutation time, and 45 days loss of recreation privileges.

Mansanet administratively appealed the hearing officer's decision. A DOC Assistant Superintendent subsequently issued the final agency decision affirming the hearing officer's decision. This appeal followed.

Mansanet presents the following arguments for our consideration:

> POINT I
>
> Appellant's Due Process Rights were violated when prison officials imposed sanctions in excess of those allowed by Title 10A of the Administrative Code.
>
> POINT II
>
> The Hearing Officer's guilty finding of P.A. *.306 violated Appellant Mansanet's due process rights by using 'conjecture' and/or 'speculation' when sufficient proof did not exist within the record to find that he committed this prohibited act.
>
> POINT III
>
> The Hearing Officer's decision to deny Appellant access to a "confidential" video, plus the finding of guilt and the sanctions imposed are not supported by credible evidence on the record.

Our review of agency determinations is limited. See In re Stallworth, 208 N.J. 182, 194 (2011); Brady v. Bd. of Review, 152 N.J. 197, 210 (1997);

A-0688-18T1

Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). We will not reverse an administrative agency's decision unless it is "arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole." Stallworth, 208 N.J. at 194 (2011) (citation omitted); accord Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). In determining whether an agency action is arbitrary, capricious, or unreasonable, we consider whether: (1) the agency followed the law; (2) substantial evidence supports the findings; and (3) the agency "clearly erred" in applying the "legislative policies to the facts." In re Carter, 191 N.J. 474, 482–83 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).

Although we afford deference to an administrative agency's determination, our review is not perfunctory and "our function is not to merely rubberstamp an agency's decision." Figueroa, 414 N.J. Super. at 191. We must "engage in a 'careful and principled consideration of the agency record and findings.'" Williams v. N.J. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

We first address Mansanet's contention, raised in Point III of his brief, that the DOC's finding he committed prohibited act *.005 in the courtyard is not supported by substantial credible record evidence. An inmate charged with

committing prohibited act *.005 is guilty if, "on the basis of an objective analysis[,] . . . the remark conveys a basis for fear."  Jacobs v. Stephens, 139 N.J. 212, 222 (1995).  In Jacobs, the Court determined that an inmate's statement to a corrections officer "'to get the fuck out of [my] face' during a 'heated' discussion" was sufficient on its own to find that a threat had been made.  Id. at 223.

Here, under the totality of the circumstances presented, Mansanet's statement that Sergeant Conrey was "lucky" Mansanet was "not standing up" objectively conveyed a basis for fear and constituted a threat.  See id. at 222. Mansanet voiced his objection to being compelled to remain on the ground, yelling, "This is bullshit.  You can't put us on the ground."  Mansanet's next statement, that Sergeant Conrey was "lucky" Mansanet was "not standing up," could only be reasonably interpreted to mean that if Mansanet stood up, he would harm Sergeant Conrey.  There is no other reason Sergeant Conrey might be lucky if Mansanet remained on the ground other than Mansanet would do harm to Sergeant Conrey if Mansanet stood up.  Thus, objectively, the statement reasonably conveyed a basis for fear.  The DOC's finding Mansanet committed prohibited act *.005 during the courtyard incident was therefore supported by substantial credible evidence.

A-0688-18T1

The same cannot be said of the DOC's finding Mansanet committed prohibited act *.306 while in the courtyard. The hearing officer determined Mansanet committed the prohibited act based on findings that Sergeant Conrey "reported" Mansanet's "actions resulted in delays," and that Mansanet's actions in the courtyard "could have escalated to a security safety issue."

To find that an inmate committed prohibited act *.306, there must be substantial evidence that "conduct . . . disrupts or interferes with the security or orderly running of the correctional facility." N.J.A.C. 10A:4-4.1(a)(2)(xxix); see also N.J.A.C. 10A:4-9.15(a) (providing that an adjudication of guilt of a prohibited act must be supported by "substantial" evidence). There is no evidence supporting the DOC's finding Mansanet disrupted or interfered with the security or orderly running of the prison.

Sergeant Conrey never reported that Mansanet's actions in the courtyard resulted in any delays in prison operations. Sergeant Conrey's detailed report concerning the courtyard incident makes no mention of any delays caused by Mansanet. The only reference in the record to purported delays appears in the initial disciplinary report's "description of the alleged infraction," but that allegation was never supported by any evidence. Similarly, the hearing officer's determination that Mansanet's conduct in the courtyard "could have escalated"

9

into a more serious security issue does not support a conclusion that Mansanet actually disrupted or interfered with either the security or orderly running of the prison. See N.J.A.C. 10A:4-4.1(a)(2)(xxix).

We therefore reverse the DOC's determination that Mansanet committed prohibited act *.306 in the courtyard. It is not supported by substantial credible evidence. See Stallworth, 208 N.J. at 194. We also vacate the combined sanctions the DOC imposed based on its determination Mansanet committed prohibited acts *.005 and *.306 in the courtyard, and remand for the imposition of appropriate sanctions for the prohibited act *.005 courtyard violation.

We reject Mansanet's contention that the DOC's finding he committed prohibited act *.005 in the courtyard should be reversed because he was denied access to the video recording of the incident. In the first instance, the recording does not include audio and, as such, is not probative of whether Mansanet made the statements supporting the DOC's finding he committed prohibited act *.005 by threatening Sergeant Conrey in the courtyard. In addition, the DOC properly denied Mansanet access to the video recording for security reasons – the recording revealed areas within the prison that are not recorded by the facility's security cameras, and the hearing officer expressly determined that confidentiality of the recording was required so Mansanet could not see the

"blind spots" in the prison that the recording revealed.  See Robles v. N.J. Dep't of Corr., 388 N.J. Super. 516, 519-20 (App. Div. 2006) (explaining that an inmate's right to a video recording may be abridged based on a "bona fide security justification" as long as the hearing officer makes "findings specifically justifying the need for confidentiality").

We are also unpersuaded by Mansanet's claim that the DOC erred by imposing consecutive sanctions for the commission of the prohibited acts in the courtyard and during the transport incidents.  Mansanet contends the events in the courtyard and during his transport to the infirmary constitute a single incident and, as such, N.J.A.C. 10A:4-5.1(c) requires the imposition of concurrent sanctions.  We disagree.

Although the courtyard and transport incidents occurred in close temporal proximity, we discern no abuse of discretion in the DOC's determination they constituted separate incidents permitting the imposition of separate, and consecutive, administrative segregation sanctions under N.J.A.C. 10A:4-5.1(c). There is substantial credible evidence supporting the DOC's determination.  The courtyard incident involved a threat to Sergeant Conrey, and it ended when Mansanet was handcuffed and removed from the courtyard.  The transport incident occurred in a different location following Mansanet's removal from the

11

courtyard, and during a different process—the transport of Mansanet after he left the courtyard. It also involved a different officer who was victimized by Mansanet's threats. Based on the wholly separate and distinct circumstances pertinent to Mansanet's commission of the prohibited acts during each occurrence, the DOC did not err by finding they constituted separate incidents allowing the imposition of consecutive sanctions.

We last observe Mansanet does not argue the DOC erred by finding he separately committed prohibited act *.005 during the transport incident. An argument not briefed on appeal is deemed waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011). We therefore affirm the DOC's finding Mansanet committed prohibited act *.005 during his transport to the infirmary.

We are not, however, able to discern from the record whether, in determining the sanctions for Mansanet's commission of prohibited act *.005 during the transport, the DOC considered that Mansanet also committed prohibited acts *.005 and *.306 in the courtyard. See generally N.J.A.C. 10A:4-9.17(a)(1) (requiring consideration of an inmate's "past history of correctional facility adjustment" in the determination of the appropriate sanction for the commission of a prohibited act). Because we reverse the DOC's finding that Mansanet committed prohibited act *.306, we also vacate the sanctions imposed

12

for Mansanet's commission of prohibited act *.005 during the transport, and remand for the DOC to consider what, if any, impact the reversal of its finding Mansanet committed prohibited act *.306 has on its imposition of the sanctions for his commission of prohibited act *.005 during the transport.

Our remand for that purpose shall not be construed as an opinion on whether the DOC should modify the sanctions already imposed for either or both of the prohibited acts under *.005 for which the DOC must again consider sanctioning Mansanet. On remand, however, if the DOC imposes sanctions beyond the required minimums, see N.J.A.C. 10A:4-4.1(a)(2) and -5.1(g), for Mansanet's commission of the two prohibited acts, the DOC shall include a statement of the "individualized reasons for the specific sanctions imposed," Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 96-97 (App. Div. 2018).

To the extent we have not expressly addressed any of Mansanet's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We affirm the DOC's determination that Mansanet committed prohibited act *.005 in the courtyard and committed prohibited act *.005 a second time during his transport to the infirmary. We reverse the DOC's determination Mansanet committed prohibited act *.306. We vacate the sanctions imposed by

the DOC and remand for reconsideration of the sanctions for each of the *.005

prohibited acts in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION